M. OPUNUI *vs.* G. KAUHI and KAUA, his wife.

APPEAL FROM JUDD, C.J. IN EQUITY.

DECISION RENDERED MARCH 27, 1882. NOT HITHERTO REPORTED.

JUDD, C.J., McCULLY AND AUSTIN, JJ.

The Plaintiff prayed for specific performance of a writing which was as follows : " I have received the sum of $100 from M. Opunui, being the money for one-half of the real estate of Kaaikaula (w), deceased. G. Kauhi." The land was the separate estate of Kaua, the wife of the said G. Kauhi.

Held, the contract was void and could not be enforced against either the wife or her husband.

OPINION OF THE COURT, BY AUSTIN, J.

In this case the plaintiff claims to enforce a specific contract to convey land, which the Chancellor held was void and therefore dismissed the plaintiff's bill. Section 1053 of the Civil Code provides that " No action shall be brought and maintained in any of the following cases : Fourthly. Upon any contract for the sale of lands, tenements or hereditaments, or of any interest in or concerning them, unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and be signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized."

The plaintiff's counsel claims that this statute was complied with. And first, to show it, produces a receipt as follows : " I have received the sum of $100 from M. Opunui, being the money for one-half of the real estate of Kaaikaula (w), deceased. G. Kauhi."

It was further proved that the defendant Kauhi who signed this paper was the husband of the defendant Kaua. That the land was the separate estate of the defendant Kaua. That when

the paper was signed she was present, and when asked to sign the agreement said her husband's signature was hers, and did not sign the paper and her name was not put to it. That thereupon the money was paid over to the husband and the receipt was delivered to the plaintiff.

The plaintiff's counsel cites many authorities which show that a parol consent or direction is sufficient to authorize the execution of a paper in writing not under seal. We think those authorities are conclusive on that point and think that unless the position under our law of the defendant Kaua as a married woman modifies the rule as to her, she might by parol authorize her husband to sign a binding contract for her to convey her interest in the land. The contract, however, shows that her husband signed his own name and did not sign hers thereto, and her name does not anywhere appear in the receipt.

We cannot believe that this, in any way, should be held as equivalent to her signature to the contract. The signature of the defendant Kauhi was requisite in order to convey his own interest. If it was intended to agree to sell hers, her name should appear upon the contract, and that it does not is fatal to it, so far as conveying her interest is concerned. His signature cannot do double duty for himself and for his wife. By the evidence, when asked to sign she refused to, and the signature was intentionally withheld. None of the cases cited by the counsel go further than to hold that where an agent has the right to sign the name of his principal to a contract and signs his own name, intending thereby to bind his principal and not himself, the principal shall be bound. But no case is cited like the case at bar.

She expressly declined to direct her husband to sign for her. The plaintiff claims a possession and part performance of a parol contract, to take the case out of the statute. To accomplish this, (1.) "The terms of the contract must be established by clear, definite and unequivocal evidence and, (2.) The Acts relied upon must be exclusively referable to the contract." (See Bigelow on Eq., p. 211.) But the plaintiff claims under a written contract, which we hold was not executed by the defendant Kaua.

It is not pretended that Kaua intended to make a verbal contract. Nor do the acts of possession as shown establish equitably the validity of a parol contract, if one had been made by her. It does not appear that substantial injury will arise to the plaintiff if the contract fail, on account of any improvements made by him on the land. The evidence is insufficient to enforce the contract against Kaua in this way.

The subsequent letter written in the names of both the husband and wife is claimed as a ratification of the first contract. It was not so intended, as the paper shows. The act of ratification must be clear and definite. It was not so. This is fatal to it. The letter expressly attacks the contract as claimed by the plaintiff, and Kaua expressly refuses to be bound by it, and no where recognizes it as her contract. We think there was no ratification. (See Browne on Statute of Frauds, Section 346.)

Further. Looking at our Statute with regard to married women, (See Civil Code, Section 1287) we find that the wife shall be deemed " for all civil purposes to be merged in her husband and civilly dead," and it is provided that she can make no contracts without his consent, with certain exceptions not affecting this case. Thus it appears that her position here is like that of a wife under the old English common law. It will therefore be proper in construing her rights in this Kingdom to follow the well considered and long established rules of the English law as held in countries in which that law prevails or has prevailed. By these rules the rights of a married woman, owing to her defenceless condition, are guarded and protected by courts with the utmost care. If we apply the spirit of these rules to the case in hand, we cannot fail to refuse to enforce this contract as against the defendant Kaua, even though it might be enforced against another. The wife's contracts to convey any of her lands are especially under the protection of these rules. This agreement to convey would be enforced nowhere. (See Bishop on Married Women, Vol. 1., Sec. 601.) The agreements of married women to convey their lands, by the rules in most other countries, must be absolute acts of conveyance showing, on private examination, that they do it freely and after due

consideration. Looking at the philosophy establishing these rules, we should hesitate long in this case to decide against Kaua, even if she had actually signed the receipt produced by the plaintiff. How shall it be with regard to the enforcement of the contract as against the defendant Kauhi? On looking at Section 1286 Civil Code, we do not think it can be enforced against him.

True his name is subscribed to the contract, and personally so far as he can he has conveyed. But again intervenes the shield for the protection of married women. This Section enacts, in substance, that the husband shall have the possession and use of his wife's land, and further enacts that "he may, with her written consent, rent or otherwise dispose of the same for any term not exceeding the term of his natural life."

But for these provisions he would have no right in her land. And so he cannot sell his own interest in it without her written consent; and there is no such consent in this case. Whatever might be said of the agency of the husband of Kaua to sign a contract for her with another, certainly it cannot be claimed that he can, as her agent, sign a stipulation with himself.

So the husband's interest is certainly not legally conveyed. And on looking at the whole case we must conclude that the decision of the Chancellor was right and it is hereby affirmed.

*A. S. Hartwell*, for plaintiff.

*W. O. Smith*, for defendant.