KELA (w) *et al. vs.* PAHUILIMA.

EXCEPTIONS TO RULINGS OF JUDD, C. J.

JANUARY TERM, 1886.

JUDD, C. J.; MCCULLY AND PRESTON, JJ.

Defendant bought land from one in possession, but the grantor had no title; subsequently plaintiffs acquired title by inheritance and purchase; defendant, having built a house on the land, claimed an equitable estoppel in his favor against plaintiffs.

Held, that defendant acquired no title by the deed from his vendor, and that the plea of estoppel failed entirely.

Plaintiffs' delay in claiming their rights held not to amount to laches, the statute of limitations not having fully run.

*Kamohai vs. Kahele,* 3 Hawn. 533, distinguished.

Exceptions overruled.

OPINION OF THE COURT, BY MCCULLY, J.

Action of ejectment tried at the last October Term.

The defendant excepts to the refusal of the Court to give the following instruction :

(1.) If the jury find that the plaintiffs, by their silence in regard to their rights in the land, allowed or led the defendant into dealing with the apparent owner, Pahuai, improving the land with his (Pahuai's) consent, and finally acquiring a supposed title therein by purchase, the defendant's title therein is secure.

(2.) If a person having a claim in premises that are in possession of another, under license of a third party, supposed by the one in possession to have a good title, sees the one in possession making valuable improvements, without protest or any kind of notice or objection, and the other goes on making improvements, and finally purchases the premises from the third party, the claimant is estopped.

The state of facts, so far as is necessary to be known, as gathered from the evidence sent up with the bill of exceptions, is as follows : Kauakahi, the patentee of the premises in question,

died in 1867, leaving a son and only child named Poeakua, who remained on the premises, and died, between six and nine years ago, intestate and without issue. One Pahuai, who had land adjoining, would seem to have had some use and occupation of these premises. (There is testimony that Kauakahi had executed a will in which Pahuai was made the devisee of one-half his land, but that this will was by chance partly burnt, and was refused probate when offered to the Probate Court.) Pahuilima, the defendant, testifies for himself, saying: "Pahuai and I have been in possession of the land since Kauakahi's death, except of the part occupied by his widow. Pahuai held the land under a will of Kauakahi, and gave Kipola the eastern part and one *loi*, and him the rest. The will was never proved. It was burnt, with the exception of a portion, before Kauakahi died. I took a bill of sale of the land from Pahuai in 1880, paying $5 for it. In 1870 I built a house on the land, with Pahuai's consent. I built the house because Pahuai said the land would go to my wife, who was his grandchild. This house cost about $200, beside the carpenter work, which I did myself. In 1882 I placed another house on the land. Bought the house for $80. It cost about $25 to haul it and $25 to fix it up. I know the plaintiffs. I came from Waimea in 1859, and married my wife the same year. The plaintiffs were then living at Waialua, where I was teaching school, and have been ever since. I often have seen them passing along the road at Waipouli, in front of the disputed premises. Previous to probate proceedings, the plaintiffs never made any claim, so far as I know, on Pahuai for any interest in the land; they made none on me. They made no protest or objection to the houses I placed on the land, nor informed me that they had any interest in the land."

The plaintiff, on the death of the son of the patentee, without issue, became a collateral heir to a small share, and has purchased sundry other shares. She does not claim the whole property. The verdict of the jury in her favor is for two-thirds, reserving the right to the defendant to move off the house which he moved on to the premises.

The sole question is, whether, under these circumstances, the plaintiff is estopped from setting up her legal title.

The defendant's counsel cites from Bigelow on Estoppel, 479, *et seq.; Story's Eq. Jur.,* § 1520; *Kalaeokekoi vs. Kahele,* 5 Hawn., 47; *Kamohai vs. Kahele,* 3 Hawn., 533; 2 Pom. Eq. Jur., §§ 808, 809, 812, 818, 821.

The plaintiff's counsel cites Wood on Limitation of Actions, p. 126; 2 Pom. Eq. Jur., §§ 806, 807, *et seq.; Boggs vs. Merced Mining Co.,* 14 Cal. 279.

In part, it is seen, they refer to the same authorities, and on the whole we find no inconsistency in the result.

The doctrine of equitable estoppel, in respect to land title, is thus stated by Mr. Justice Field in *Boggs vs. Merced Mining Co.,* 14 Cal., and cited, with other cases, in 2 Pomeroy's Equity Jurisprudence, 269. "In order to estop a party, by his conduct, admissions or declarations, the following are essential requisites: It must appear (1) that the party making his admission by his declaration or conduct, was apprised of the true state of his own title. (2) That he made the admission with the express intention to deceive, or with such careless or culpable negligence as to amount to constructive fraud. (3) That the other party was not only destitute of all knowledge of the true state of the title, but of all means of acquiring such knowledge. (4) That he relied directly upon such admissions, and will be injured by allowing the truth to be disproved."

Take this citation from the brief for defendant. Bigelow on Estoppel, 479, defines estoppel generally: "Where one by his words or conduct willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief so as to alter his previous position; the former is concluded from averring against the latter a different state of things as existing at the same time."

The counsel for the defendant in this case seems to assume that the defendant, in buying from another occupant of these premises, in a measure built up some title better than he had bought, and if he "supposed" he was buying something, he must be considered to have contributed some validity to that which was of no value in the hands of the first party. This is opposed to the principles that no one can give a title which he does not possess,

and that a purchaser is bound to examine the title, and gains nothing by buying in willful ignorance.

Comparing the facts given even in the defendant's testimony with the law, as cited above, the plea of equitable estoppel fails entirely. The defendant had every opportunity to know that Pahuai, of whom he bought, had no title to the land. The plaintiff does not appear to have done anything to induce him to act on a different state of things, and the delay of plaintiff to claim her rights does not in this case seem to amount to laches beyond what is allowed by the jury in their verdict giving defendant the right to remove the house built on the land since the plaintiff's title accrued, and personally with her knowledge of the trespass.

In *Kamohai vs. Kahele*, the substantial issue before the Court was as to a certain royal land patent being fraudulent, and the remark that, under the circumstances of that case, the plaintiff was in any view of the facts chargeable with laches, recognized the doctrine that where the party prosecuting an equitable title is shown to have been guilty of gross laches in prosecuting it, and long and unreasonable acquiescence in the assertion of adverse rights, he would be barred in equity, although the statute of limitations barring the assertion of a legal title had not fully run. In this the Court followed *Kalakaua vs. Keaweamahi*, 4 Hawn. 577.

But this doctrine does not apply to the case at bar, in which the holder of the legal title is sought to be estopped by his mere acquiescence in the adverse rights of the defendants, the statute of limitations not having barred him. No other ingredient of an estoppel is shown.

The case before us presents a very common state of facts among Hawaiians. When the owner of property dies, and the little estate remains for years in possession of some friend who may have lived with him on the land, without claim by the collateral heirs, something more than this is required to estop the rights of parties under statute of limitations.

The exceptions are overruled.

*Kinney & Peterson*, for plaintiffs.

*S. B. Dole*, for defendant.

Honolulu, January 28, 1886.