SAULT STE. M. LAND & IMP. CO. *v.* SIMONS *et al.*

*(Circuit Court, W. D. Wisconsin. March 29, 1890.)*

**VENDOR AND VENDEE—SPECIFIC PERFORMANCE OF CONTRACT.**

Defendants, who owned land in common with complainant, wrote the latter offering to buy for a certain price, and set out certain cash items paid by complainant, which they agreed to refund, and complainant answered, setting out additional items paid by it, and saying that if the statement was as understood by defendants it would sell. Defendants replied, stating that such additional items were not proper, but they thought the matter could be adjusted, and further stated that they had expected to buy another person's interest in the land, but were having difficulty in

arranging with him, and added that they would wish a railroad company to bind itself to maintain a station near the land. *Held,* that the minds of the parties did not meet, and the correspondence did not constitute a contract by defendants to buy.

In Equity. Bill for specific performance.

*Baker & Helms,* for complainant.

*Dickinson & Buchanan,* for defendants.

BUNN, J. This is a suit in equity brought by the complainant, a corporation existing under the laws of Minnesota, against the defendants, who are residents of Wisconsin, to enforce the specific performance of a contract for the sale of certain tracts of land lying in Wisconsin. There was a general demurrer put into the bill for want of equity, and the case turns wholly upon the question whether there was a contract for the sale of land between the parties. It appears from the bill of complaint that on the 2d of August, 1888, and prior thereto, the complainant corporation and the defendants were seised as tenants in common, each holding an undivided half interest in certain tracts of land; that there was an agreement between them by which the complainant was empowered to do whatever work and expend whatever money was necessary for the platting, improvement, and preparing for market of the lands at the joint expense of the complainant and defendants, one-half of the outlay to be borne by each party; that the complainant, prior to said 2d of August, 1888, had expended, pursuant to said agreement, certain sums of money, and that a certain contract had been made by both the parties with one L. Corbett and John R. Clark for the sale of certain timber growing and standing upon certain of the lands, the purchase price being $4,000, and that there was still due from Corbett and Clark upon the said contract $2,000; that, matters being in this situation on the said day named, the defendants, by D. P. Simon, authorized to act for both, addressed the following letter to H. C. Baker, Esq., of Hudson, Wis., who was authorized to act as agent of the complainant, to-wit:

"EAU CLAIRE, WIS., Aug. 2, 1888.

"*H. C. Baker, Esq., Hudson, Wis.*—DEAR SIR: Mr. Barnett and myself, after further consultation in regard to the Flambeau town-site, conclude to make the following proposition to the Land and Imp. Co., viz.: We will take for our interest to be deeded to the company thirty-five hundred dollars, ($3,-500,) or we will pay that sum for the company's interest there; the purchaser to have the benefit of the Corbett and Clark contract, ($4,000.) In case we buy of the Co., we will refund to them purchase price of lands they have bought,—

| | | |
|---|---|---:|
| 80 acres of Frenchman, | | $1,200 00 |
| Expense of platting, | | 150 00 |
| Cutting road, | | 125 00 |
| Purchase fm. Govt. Lot 3, Sec. 12, | | 27 63 |
| | | $1,502 63 |
| And the other items of $112.50 & $250, | | 362 50 |
| About | | $1,865 13 |

"In case you buy of us, you will pay us only the $3,500.00, which the Corbett contract will more than pay. In making this offer we have put a very low valuation on our part. Will you submit this to the company and get a reply as early as possible, and oblige

"Yours, truly, D. P. SIMONS."

To this letter the complainant sent the following answer:

"MINNEAPOLIS, August 6th, 1888.

"*H. C. Baker, Esq., Hudson, Wis.*—DEAR SIR: Your favors of the 2d, 3d, and 4th inst., inclosing alternate proposition from D. P. Simons, to either buy or sell our joint interests at Flambeau Falls, received. In answer will say that if I understand their proposition correctly, will sell the company's interest in the following descriptions, to-wit: An undivided one-half in government lots 1 and 2, in sec. 2. Ditto in lots 1–2–3 and 4, in section 3. The N. W. $\frac{1}{4}$ and W. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of said section 3. Entire interest in lot 3, section 2, and the S. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ section 3. All in township 34 north, of range 6 west. Lot 5 of section 24, in township 35 north, of range 6 west, together with the right of flowage on any lands which the company may own east of the Flambeau river. Their proposition for the above interest, as I understand it, is as follows: They will refund us the following amounts which we have disbursed, viz.:

| | | |
|---|---|---|
| The S. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of section 3, purchased of Frenchman, | $1,200 | 00 |
| Expense of platting, - - - - - - | 27 | 63 |
| Cutting road, - - - - - - - - | 125 | 00 |
| Two items, one for - - - - - - | 112 | 00 |
| One for - - - - - - - - | 250 | 00 |
| | $1,865 | 13 |
| For perfecting title and moneys advanced to W. W. Rich, in June, 1884, as per statement rendered, (totals,) - | $1,865 | 13 |
| There are two items which appear on our books, which they have omitted, by mistake, no doubt. One is an item of taxes paid by us of - - - - - | $171 | 32 |
| Also for blue print and plat of town-site, - - - | 14 | 00 |
| Total, - - - - - - - - | $185 | 32 |
| One-half of which will properly belong to them to pay, viz., | $92 | 66 |
| Less taxes paid by them, amounting to - - - | 15 | 03 |
| Of which our proportion would be - - | 7 | 52 |
| Amount to be added to Mr. Barnett's statement of moneys advanced by us, - - - - - - - | 85 | 14 |
| Total sum advanced by the "Soo" Land Company, - | 1,950 | 27 |
| In addition to this they propose to give us - - - | 3,500 | 00 |
| Amount to be paid this company, less amount received on Corbett & Clark contract, - - - - - | 2,000 | 00 |
| Net amount to be paid this company for their interest - | 3,450 | 27 |

"We to assign the balance remaining unpaid on the above contract of Corbett and Clark, including all unpaid interest, to Messrs. Simons and Barnett. If this statement of their proposition is as understood by them, I will cause deeds to be made in accordance therewith.

"Very truly yours, C. B. HAMMOND, Genl. Agent."

To this letter the defendants sent the following answer, which closed the correspondence:

"EAU CLAIRE, WIS., Aug. 18th, 1888.

"*H. C. Baker, Esq., Hudson, Wis.*—DEAR SIR: Yours of the 7th, inclosing C. D. Hammond's statement and acceptance of our proposition, was duly received. The account contains some items that do not properly belong in it, I think, but I think we can adjust that when I see you or Mr. Hammond. Mr. Seymore and B. Viles own an interest in the lands that I supposed we could handle as we did ours, but we are having some difficulty in arranging with them at present. I hope we shall soon get them satisfied and out of the way. We would want the R. R. Co. to bind themselves to maintain a station at that point as it is now, with agt., opr., etc., for a term of years at least, which I suppose they will do.

"Yours, truly,                                       D. P. SIMONS."

The sole question raised and argued on the hearing was whether the above correspondence constituted a written contract for the sale of the complainant's interest in the real estate described. It will be noticed that in the first letter by defendants, proposing to either sell or buy, there is no description of the land at all. It is simply referred to as the "Flambeau Town-site." There is nothing in the complaint to show that the land described in the answer of the complainant company is the same as the town-site spoken of in the first letter, though that inference must be made in order to sustain a contract from this proposal and supposed acceptance. But as the question of the sufficiency of this description was not argued by counsel, the court will proceed to consider the case upon the one question made, which is whether there was a distinct proposition for a sale or purchase made by the one party and an unqualified acceptance thereof by the other. If not, then it is clear that there was not such a meeting of the minds of the parties as is necessary to constitute a contract. If there was not a full and complete meeting of the minds of the parties upon a distinct proposition for a sale, the court cannot enforce a specific performance, although the difference between them may be very slight. The parties must make their own contract in all particulars, and if they have not done so the court cannot aid them by saying what the contract ought to be. There must be an unqualified and unmodified acceptance of a distinct and unconditional offer to constitute a contract by letter correspondence. See *Baker* v. *Holt*, 56 Wis. 100, 14 N. W. Rep. 8; *Sawyer* v. *Brossart*, 67 Iowa, 678, 25 N. W. Rep. 876; *Myers* v. *Smith*, 48 Barb. 614; 1 Chit. Cont. 15, and notes; Bish. Cont. § 322; *Iron Co.* v. *Meade*, 21 Wis. 480; 1 Pars. Cont. (6th Ed.) 475; *Siebold* v. *Davis*, 67 Iowa, 560, 25 N. W. Rep. 778; *Nunday* v. *Matthews*, 34 Hun, 74. Now, waiving the question of the want of any description of the land in the first proposal by the defendants, was there a meeting of the minds on one and the same thing in all other particulars? There was certainly an agreement on the matter of the price of the one-half interest in the land. But it seems quite as clear that there was not in respect to the manner and times of payment, if the parties intended to make a settlement of the cash account for disbursements on the land a condition of the contract. The

view was pressed with much vigor by complainant's counsel that, as the parties agreed upon the value of land, it was not material to the sale that they should agree upon a statement of the cash account for expenditures; that that was an outside matter, and could be adjusted independently. But if the parties have by their acts made that material, the court cannot adjudge that it is not material; and this is just what they seem to have done. If the defendants, in their original proposal to buy or sell, had simply said, "We will give or take $3,500, and let the money acct. stand to be arranged by subsequent agreement or by arbitration," and this proposition had been accepted by complainant, that would constitute a contract for sale, though the parties might never have been able to settle the account for disbursements in either of the ways mentioned. The court, in such case, would find some other way to settle the account. But it seems evident from all the three letters that the parties wished and intended to arrive at an adjustment of the cash account and the Corbett and Clark contract, as part and parcel of the terms of the sale and the payment of the consideration, and if that is what they intended, and there was no meeting of minds upon that question, then there was no contract, though the conditions in all other respects were agreed upon. The original proposal by defendants, after naming the price, immediately adds: "The purchaser to have the benefit of the Corbett and Clark contract, ($4,000.) In case we purchase of the Co. we will refund to them purchase price of lands they have bought,"—and then goes on to state the account as they understand it, making a total of disbursements by complainant of about $1,865.13. Can it be said that this statement of the account is not a material part of the defendants' proposal? In the complainant's answer to the defendants' proposal, after making a statement of the cash account substantially as stated in the proposal, they say:

There are two items which appear in our books, which they have
   omitted, by mistake no doubt. One is an item of taxes paid by
   us of   -   -   -   -   -   -   -   - $171 32
Also for blue print and plat of town-site,   -   -   - 14 00

                                                            $185 32

One-half of which will properly belong to them to pay, viz.,   - $92 66
Less taxes paid by them, amounting to   -   -   -   - 15 03
Of which our proportion would be,   -   -   -   -   - 7 52
Amount to be added to Mr. Barnett's statement of moneys advanced
   by us,   -   -   -   -   -   -   -   - 85 14

Then, after making a further statement of the account, they close by saying: "If this statement of their propositions is as understood by them, I will cause deeds to be made in accordance therewith." This shows clearly two things—*First*, that the complainant amended materially in complainant's favor, the defendants' statement of the cash account; *second*, that they did not understand by their reply that they were closing a bargain by an unconditional acceptance, but, on the contrary, expected a further communication from the defendants, and a reply to its (the

complainant's) understanding of the state of the accounts and of the balance to be turned on the purchase price. It seems clear, then, that the complainant's letter left the matter open for further adjustment.

And now we come to the defendants' reply, which closes the correspondence, and which seems still to leave the matter open, not only as to the cash account, but by introducing new matter, which, of course, if the bargain had not already been closed, it was entirely competent for them to do. The defendants start out by calling the complainant's letter "a statement and acceptance of our proposition." But from what they say afterwards it is quite evident that they did not consider it an unconditional acceptance, as we have seen that it was not in fact; for they go on to say that "the account contains some items that do not properly belong to it, I think, but I think we can adjust that when we see you or Mr. Hammond,"—clearly showing that they did not consider the trade complete, and referring the matter for future consultation and agreement. Then the defendants introduce two new and distinct elements, on account of which they were apparently not ready to close the trade. If this is not the proper construction to put upon them, it is difficult to say why they should have been introduced at all. They say:

"Mr. Seymore and B. Viles own an interest in the lands that I supposed we could handle as we did ours, but we are having some difficulty in arranging with them at present. I hope we shall soon get them satisfied and out of the way."

Then again:

"We would want the R. R. Co. to bind themselves to maintain a station at that point, as it is now, with agt., opr., &c., for a term of years at least, which we suppose they will do."

It would seem from the defendants' introducing these new terms that they intended to make them conditions, or at least as showing that they wanted further time for adjusting them to their satisfaction before closing the trade.

I am of opinion, considering the correspondence as a whole, it does not constitute a written contract for the sale of the complainant's interest in the land. The demurrer is sustained, and complainant's bill dismissed, with costs.