## TALULA L. HAYSELDEN *v.* WAHINEAEA (w).

ERROR TO THE CIRCUIT COURT, FIRST CIRCUI .

SUBMITTED MARCH 22, 1895.          DECIDED MAY 31, 1895.

JUDD, C.J., BICKERTON AND FREAR, JJ.

Where a devise is of a "half lot" of a piece of land to each of two persons, and it is uncertain which half lot was intended for one and which for the other, they are tenants in common of the whole piece.

A deed by W., a grantee of one of the devisees, of the "Southeastern division" of the whole piece, describing it by metes and bounds, declaring the Northwestern division as the lot belonging to K., the other devisee, being spread on the registry of deeds, is a public declaration upon which the grantees of K. could rely, and W. is estopped from denying that the lot declared in her deed as belonging to K. was K s.

When the facts are established it is for the Court to find whether they create an estoppel.

### OPINION OF THE COURT BY JUDD, C.J.

The history of this case is interesting. An action of eject-ment was brought on for trial at the October Term, 1892, of the Supreme Court, Judd, C.J., presiding. The jury, com-posed of six foreigners and six Hawaiians, disagreed.

It came to trial again in the Circuit Court, First Circuit, at the February Term, 1893, Circuit Judge Frear presiding. The jury found for the defendant, three dissenting. On the 12th of April, 1893, the Supreme Court on exceptions, ordered a new trial on the ground that the verdict was contrary to the weight of evidence. The case was tried a third time in the Cir-cuit Court, Judge Cooper presiding, at the May Term, 1894, and the jury returned a verdict for defendant, two dissenting.

The cause comes to us again on a Writ of Error, sued out by plaintiff on the 21st November, 1894.

The assignments of error are as follows:

"(1). In the refusal of the Court to instruct the jury as thereunto requested by this plaintiff in error.

"(2). In having instructed and charged the jury as per the transcribed notes of said charge as aforesaid.

"(3). In the rendition of the said verdict and judgment.

"(4). In the denial and overruling of said motion for a new trial by and in behalf of this plaintiff in error."

To a complete understanding of the case it must be reviewed.

The land which the plaintiff seeks to recover is a lot in the block, in Honolulu, bounded by Mililani, Merchant, Richards and Queen streets, and does not abut upon any street. The foundation of the title as claimed by both parties is the Will of Makaioulu, admitted to probate in 1867.

It seems to us now that this will has never been correctly construed and a critical study of it has led us to conclusions that differ somewhat from interpretations put upon it by the Courts that have dealt with it. Leaving out what is not essential to the present discussion, we find that Makaioulu, who had purchased two lots, the makai one fronting on Queen street, being that granted to Kalama for Nakookoo by Royal Patent No. 1123 and another one adjoining and mauka of it being that granted to Kanakaiki by Royal Patent 3566 B, disposed of them by will in which he declared them to be divided into three portions or "apanas."

These diagrams will make this discussion clearer:

Land of Makaioulu as divided by his will:

2a is Kalo's.    2b is Keana's.

As indicated on the map in Court:

3 is the lot sued for.

The apana or lot upon which his wooden house then stood he calls Apana *one*. This lot he devised to his wife Kai in lieu of dower, remainder to Kalo his daughter and her heirs. "Apana elua," or lot *two*, is the entire mauka lot.    This he devises, one half to his brother Keana for life, remainder to

Kekipi (Keana's wife), and the remaining half to his daughter Kalo for life, remainder to Kai. He adds to this devise to Kalo the lot on the south side of the lot where his house stands (Lot No. 1) and this he calls "Apana ekolu" or lot *three*.

His exact language is as follows: "Aha, o ka hapalua o ka Halelaau i koe iho i oleloia maluna, e ku'la ma ka apana mua. A o ka hapalua—Pa ma ka aoao mauka aku o ka Halelaau e oleloia nei, oia ka Apana elua, ke haawi aku nei au a lilo loa no kuu kaikaina ponoi a'u i aloha 'i no J. Keana, oiai oia e ola 'na, a ina i make oia, e ola ana o Kekipi kana wahine mare, alaila, e ili aku no na waiwai a pau nona, a me kona mau hooilina aku."

This we translate literally as follows: "Fourth: The half remaining of the wooden house mentioned above standing on lot *one*. And the half-lot on the side mauka of the aforesaid wooden house, that is the apana (or lot) *two*, I give absolutely to my beloved younger brother J. Keana as long as he lives, and if he dies and his wife Kekipi is alive then all this property is to be hers and her heirs after her."

The next clause in the will is as follows: "Alima, O ka hapalua—Pa i koe iho ma ka apana elua. A o ka apana Pa ma ka aoao Hema aku o kahi e ku nei o ka Halelaau, oia ka apana ekolu,— &c., &c., (here mentioning some other property) ke hooilina aku nei au no ka'u kaikamahine ponoi no Kalo, oiai oia e ola 'na, a ina i make oia, e ola ana o Kai kona makuahine ponoi, alaila e ili aku no na waiwai a pau nona, a no kona mau hooilina aku, a i ka manawa pau ole. This we translate as follows: "Fifth: The half lot remaining of apana *two*. And the lot on the south side of the place where the wooden house stands, that is 'apana three,' &c., &c., (here mentioning some other property) I devise to my own daughter Kalo, as long as she lives, and if she dies and her own mother Kai be alive then all this property goes to her (Kai) and her heirs after her forever." Kai devised this property to Kalo by will admitted to probate in 1867.

It is evident from the above that the three divisions the testator made of his land were, lot one, the yard or lot where the house stands, lot two, the yard mauka of lot one, and lot three, the yard south of lot one. Lot two he devises, one half to Keana for life, remainder to Kekipi, and the other half to Kalo for life, remainder to Kai. Both halves of lot two are mauka of the lot where the house stood. They were not divided by metes and bounds and are not further described in the will. In the fifth article of the will lot three is the lot on the south side of lot one, and it is not one of the halves of the lot mauka of the house.

It seems to us that the testator considered his land as theoretically divided into *three* portions and not in four, for he says so in his will and the last lot spoken of on the south side of the house he calls "apana three," and if the mauka part is considered to be apanas 2 and 3 respectively, then the last lot devised south of the house would be apana 4, and it is in fact, the fourth sub-division of his land.

The contest between the parties is as to which half of lot two was left to Keana for life, remainder to Kekipi. But whether this was the southeasterly or Waikiki side half, marked lot 2 on the map, or the northwesterly or Ewa half marked lot 3 on the map, or an undivided interest in the whole apana two, certainly the lot so devised is the lot for which the defendant received a deed from Kekipi. This deed, dated December 17, 1870, throws no light upon the question as to which lot was intended, for it describes the land merely as "lot two in the will of Makaioulu," (devised to J. Keana), and adds no further description by which it can be identified.

So far then, it is uncertain by the will of Makaioulu which half lot was intended to be Keana's, and which Kalo's. The testimony of Kekipi (defendant's grantor) that she pointed out the lot now sued for (lot marked 3 on the map) as the lot she sold to defendant, is but Kekipi's idea that it was the lot intended to be hers. The evidence that Wahineaea, when the old house

became dilapidated, built a small house with its material on lot 3 of the map, and lived there for a season is also no more than her understanding at the time that it was the lot she bought. It should be remembered that Kalo, the devisee of the other half of the lot lived there also, with Wahineaea the guardian of her person until she became married and moved to Kauai. The possession of neither was adverse to the other. Each had an undivided half of "apana two" of the will. They were therefore tenants in common. This view is strengthened by the fact that on December 10, 1872, Wahineaea and Kalo joined in a mortgage to McInerny—of the entire mauka lot (2 and 3 of the map) the outer boundaries of the entire apana two being given—thus covering both devises.

This leads us to the deed made by Wahineaea to Fanny Young Kekelaokalani. In order to pay the McInerny mortgage, which had been assigned to the last named person, on which they were jointly liable, Wahineaea sold to F. Y. Kekelaokalani—her portion. She describes it as being "the southeastern division of Kuleana Number 6428, Royal Patent No. 3566 to Kanakaiki, the other division belonging to Kalo, the land hereby conveyed being devised by Makaioulu, deceased, to Keana for life, remainder over to Kekipi, and by Kekipi the widow of Keana deceased, conveyed to me by deed," &c. The metes and bounds, courses and distances are given, and they describe fully the lot marked 2 on the map. The deed is dated January 5, 1876. On the same day Kalo executed to Mrs. F. Y. Kekelaokalani a mortgage of the "northwestern half of kuleana No. 6428, Royal Patent No. 3566 to Kanakaiki, being the same property devised to me by the will of my father Makaioulu," &c.

The Court was asked by plaintiff to charge as follows:

"1. If the jury believe, from the evidence, that defendant executed the deed to Fanny Young Kekelaokalani, (Liber 45, pp. 81-2) a copy of which, (Exhibit 'I.') is on file herein, wherein she described her apana under the will of Makaioulu as being

the southeast portion of the Kanakaiki Kuleana, (No. 6428 B,) and described the balance of said kuleana as belonging to Kalo —then defendant is now estopped to now claim title to any portion of that kuleana which she therein described as belonging to Kalo.

"2. The land herein sued for is described in said deed as belonging to Kalo; and plaintiff shows title to it from Kalo. If defendant executed the deed in question to Fanny Young Kekelaokalani, she cannot now be heard to claim the land herein sued for, as being hers, under the will of Makaioulu, and the deed to her from Kekipi.

"3. If the jury believe that defendant executed the deed to Fanny Young Kekelaokalani, (Exhibit 'I.') she is presumed to have known its contents, and she cannot now come in and allege fraud or mistake therein."

These requests were refused by the Court. We consider that an estoppel *in pais* was created by the deed of Wahineaea. It was not an estoppel by deed, for the representation was not made directly to Kalo, she not being a party to it.

The definition of an estoppel *in pais* is thus given by Lord Denman (*Pickard v. Sears*, 6 A. & Ellis, 475.) "Where one by his words or conduct willfully causes another to believe in the existence of a certain state of things and induces him to act on that belief, so as to alter his previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." We adopted this rule, admitting equitable estoppels at law, in *Kamohai v. Kahele*, 3 Haw. 530.

Wahineaea made by her deed a declaration not only that her half of the apana devised by Makaioulu was the southeastern division, but that the other division belonged to Kalo.

Now, the deed of Wahineaea was proved. The only evidence against it was Wahineaea's rather qualified denial that she signed it. But her admissions as to her going to the acknowledging officer on the date of the deed in company with Kalo

about this land shake her denial.　We held in *Kamalu v. Lovell*, 5 Haw. 601, that "after lapse of time and circumstances of assent and possession the testimony of a grantor will not be sufficient in law to set aside his deed."　We may take it as settled from the evidence that the deed of Wahineaea was executed.　Now, whether an estoppel results from established facts is a matter for the determination of the Court.　*Lewis v. Carstairs*, 5 W. & S. 209.　"If the elements of an estoppel are present the conclusion will follow as a matter of law." Herman on Estoppel and *Res Judicata*, Sec. 1299.

It may be objected that the representation of Wahineaea that the southeastern lot was hers and the other (or northwestern) lot was Kalo's was not made to Kalo and therefore is not available to her privies.

In *Waters' Appeal*, 35 Penn. St. 523, it was held that a declaration in a deed by a vendor conveying and releasing all "his right, title, interest, claim and demand whatsoever in law and equity" spread upon a public record, constituted an estoppel *in pais*, of which the subsequent judgment creditors of the vendee can avail themselves; the vendor having so acted as to induce the belief that he had no further claim in the land, the vendor is estopped from setting up a prior judgment against those who had given credit to the vendee upon the faith of the existence of such a state of facts.

In *Quirk v. Thomas*, 6 Mich. 78, land was conveyed to a grantee to defraud creditors, and it was held that the deed appearing upon the public records was a declaration to the world that the grantee was the true owner, and that though it intended only to defraud creditors, any *bona fide* purchaser could set up an estoppel against any denial of the grantee's title.　As was said in *Kinney v. Whiton*, 44 Conn. 271, " in case of a public declaration the whole public may act upon it, and their action will fall within the scope of the intention, actual or presumed, of the party making the declaration."

Now the intending grantees of Kalo in searching the title of

the land in the public records must necessarily come upon the deed of Wahineaea, because both the title of Kalo and of Wahineaea came through various conveyances from the will of Makaioulu.    Finding this declaration in Wahineaea's deed as to which division was hers and which was Kalo's, a purchaser would be authorized to rely upon it, and the presumption exists that Wahineaea intended the public to so rely upon it.    Therefore she is estopped from now setting up her denial that the land sued for was Kalo's.

The whole case entitles the Court to reverse the verdict and judgment and to order judgment for the plaintiff, *non obstante veredicto*, which is done accordingly.

*C. W. Ashford* and *Cecil Brown*, for plaintiff.

*J. Nawahi*, for defendant.