Argued January 13, affirmed February 1, rehearing denied February
23, 1916.

# CARLSON v. O'CONNOR.

(154 Pac. 755.)

**Specific Performance—Right to Relief.**

1. To entitle plaintiff to the specific performance of a contract to
sell land, it is necessary for him to clearly prove a valid contract
between himself and defendant.

> [As to certainty of contract, in suit for specific performance,
> see note in 140 Am. St. Rep. 58.]

**Frauds, Statute of—Sufficiency of Evidence—Authority of Agents.**

2. Evidence in a suit for the specific performance of a contract
for the sale of land, alleged to have been made by defendant's agent,
*held* insufficient to show any instrument in writing, subscribed by
the party to be charged, or by his lawful agent under written au-
thority, as required by Section 804, L. O. L.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

This is a suit by Peter G. Carlson and J. A. Kall-
strom against M. H. O'Connor for the specific perform-
ance of a contract to sell land. From a decree in favor
of defendant, plaintiffs appeal.

AFFIRMED.   REHEARING DENIED.

For appellants there was a brief over the names of
*Messrs. Bronaugh & Bronaugh* and *Mr. Franklin F.
Korrell,* with an oral argument by *Mr. Jerry E. Bro-
naugh.*

For respondent there was a brief over the names of
*Mr. Peter H. D'Arcy, Mr. Charles W. Fulton* and
*Messrs. Ridgway & Johnson,* with oral arguments by
*Mr. D'Arcy* and *Mr. Fulton.*

Department 1. MR. JUSTICE BEAN delivered the
opinion of the court.

It appears from the record that a tract of 106 acres
of land on the outskirts of Portland was advertised

to be sold at public sale by the administrator of the estate of A. G. Ryan, deceased. On March 16, 1914, the plaintiffs attended the sale and bid for the property. The highest bid, $16,000, was made by one Blatt in behalf of defendant, M. H. O'Connor. Upon looking into the value of the property, plaintiffs decided that they would pay more for it, and deposited the required amount to bring about a resale, which took place May 28, 1914. The plaintiffs were present and bid, but the highest offer of $24,000 was made by H. Blatt, who was representing O'Connor. When the sale was over the plaintiffs regretted they had not offered more for the property, and finally decided to deposit a sufficient amount to bring about a second resale, according to the statute, and $2,600 was placed with the attorney for the administrator of the estate for that purpose. During this time Mrs. M. P. Long, who resided in New York, and had a general power of attorneys from all the heirs of A. G. Ryan, deceased, was present in Portland and was represented in the matters of the estate proceedings by attorneys other than the one for the administrator. O'Connor employed Blatt to bid for him at the sale, as the former had a mortgage on the property, and agreed to pay him $100 for his services. On the day following the second sale, Blatt assigned all his title and interest in the property by virtue of his bid to O'Connor, and authorized the administrator to execute a deed to the latter.

A few days after the plaintiffs had deposited the amount of money necessary to bring about a second resale, Blatt came to one of them and told him that if they would take $1,000 and withdraw their request for a resale he would give it, or if they would give him $1,000 he would transfer his bid to them. Plaintiffs.

told Blatt that if it could be done legally they would give him the $1,000 for his bid, and withdraw their request for a resale, because in that way they would get the property for $25,000. Plaintiffs then went to Mrs. Long and her attorneys, and explained Blatt's offer, asking if there was any objection to their accepting it. One of her attorneys told plaintiff Kallstrom that it was a dangerous thing to do. In settling this estate Mrs. Long had been detained from her home for a long time, and pressing matters required her presence there. The plaintiffs had prevented the first sale for $16,000 from being confirmed, and had thus saved the estate $8,000, and Mrs. Long and her attorneys were of the opinion that if the plaintiffs did not want to carry on the resale they could withdraw from it. Accordingly Mrs. Long and her counsel consented that the money deposited by plaintiffs be returned to them. After he had notified the probate judge of the proposition made by the plaintiffs, the attorney for the administrator returned the deposit. After consultation with their attorneys, plaintiffs entered into a contract on June 15, 1914, with H. Blatt and his wife, by which they agreed to pay him $1,000, provided he would secure them a good title to said land at $24,000, and paid him $100 of such sum.

At that time plaintiffs were unaware that Blatt had purchased at the sale for O'Connor, or that he had already made an assignment to him of his bid. The heirs represented by Mrs. Long consented that the sale should be confirmed in Blatt, which was done about June 18, 1914, whereupon the administrator executed a deed of the property to O'Connor, according to the assignment made by Blatt to him. When plaintiffs demanded of Blatt that he deed the property to them as agreed, he told them that he had been cheated out

of it, and wanted to give them back the $100 paid him, which plaintiffs refused to accept. Plaintiffs tendered O'Connor performance of their part of the contract entered into with Blatt, and demanded that he specifically carry out its terms. Upon his refusal so to do this suit was instituted. The trial court held that each side was trying to take advantage of the other, and that both were trying to take advantage of the estate, and that, the plaintiffs not having come into court with clean hands, the parties should be left *in statu quo.*

1, 2. Blatt's conduct in the transaction cannot be explained from any rational standpoint. Neither the circumstances in connection with the transaction nor the weight of the evidence indicate that O'Connor authorized Blatt to make any sale of the land. On the contrary, they refute this. Defendant seemed acquainted with its value. Blatt appears to be utterly irresponsible. Plaintiffs knew that Blatt had not yet obtained title to the land, but took no precaution to ascertain as to his reliability. Whether Blatt intended to obtain the $1,000 from plaintiffs for his own benefit is unnecessary to determine. It appears that he did not inform O'Connor of the deal with the plaintiffs until defendant requested him to execute a deed of the real property to him which was prepared. Blatt then produced from his pocket a copy of the contract he had executed to the plaintiffs, whereupon O'Connor exclaimed:

"What in —— did you do that for? Who told you to do that?"

In explaining Blatt asserts:

"Why, I done that to get my $100."

He said that nobody in particular told him to do so. In order for the plaintiffs to be granted the relief asked, it is necessary for them to clearly prove a valid,

binding contract between themselves and defendant: *Kine* v. *Turner,* 27 Or. 356 (41 Pac. 664). From a careful examination and consideration of all the evidence we find that they have failed to do this. Section 804, L. O. L., provides:

"No estate or interest in real property, other than a lease for a term not exceeding one year, nor any trust or power concerning such property, can be created, transferred, or declared otherwise than by operation of law, or by a conveyance or other instrument in writing, subscribed by the party creating, transferring, or declaring the same, or by his lawful agent, under written authority, and executed with such formalities as are required by law."

It is contended on behalf of the plaintiffs that defendant authorized Blatt to make the contract with plaintiffs and that defendant is estopped from denying Blatt's authority. The only basis for this claim must have its foundation upon the testimony and statements of Blatt which are wholly unreliable.

The decree of the lower court was right, and is therefore affirmed.     AFFIRMED.     REHEARING DENIED.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE McBRIDE concur.

MR. JUSTICE HARRIS concurs in the result.