MOLOKAI RANCH, LIMITED *v.* CHARLES E. MORRIS, ALSO KNOWN AS C. E. MORRIS, AND CHARLOTTE D. MORRIS, ALSO KNOWN AS MRS. C. E. MORRIS.

No. 2480.

ARGUED JULY 2, 1942.                    DECIDED SEPTEMBER 21, 1942.

KEMP, C. J., PETERS AND LE BARON, JJ.

220

OPINION OF THE COURT BY LE BARON, J.

The Molokai Ranch, Limited, brought ejectment against the defendants for restitution of a certain parcel of land situated at Maalehua on the island of Molokai, upon which the defendants were and are now living.

In addition to a general denial, the defendants interposed two alleged equitable defenses. Throughout the proceedings before the lower court, as well as on appeal, the attorney for the defendants argued that an oral contract, enforceable in equity, between the parties for the sale and purchase of the property in question, existed as the primary basis of the defenses and this theory was reflected by his objections and exceptions below and in his grounds of appeal to this court. The first defense alleged that by reason of such a contract the defendants had equitable title, which prevented the plaintiff from asserting its legal title to regain possession in ejectment. The second defense, as an alternative to the first, invoked the doctrine of equitable estoppel for the purpose of defeating the plaintiff's action. At the close of the trial plaintiff's attorney moved for a directed verdict against the defendants. This motion was granted by the trial judge and a directed ver-

dict entered. A motion for a new trial was denied and the defendants have brought their appeal to this court.

Assuming, for the purpose of disposing of the first defense, that an oral contract for the sale of the property in question did exist between the parties, enforceable in equity, and that as a result thereof, together with subsequent acts of the parties, the rights of the defendants ripened into a complete equitable title to the premises involved, such a title would not under the rulings of this court constitute a defense to an action in ejectment at law. (*Magoon* v. *Kapiolani Estate,* 22 Haw. 510, 516. See also *Okuu* v. *Kaiaikawaha,* 7 Haw. 311, 312.) An equitable title to real estate is purely equitable in nature and indicative of a remedy peculiar to a court of equity; the distinction between law and equity and in the administration of legal and equitable remedies having been preserved in this jurisdiction. Consequently, if the defendants are the equitable owners by virtue of an enforceable contract in equity and would, through a suit in equity, be entitled to have the legal title of the property conveyed to them, it would be of no assistance to them as a defense here against the legal title of the plaintiff. Subject to equitable estoppels, which are admitted in ejectment actions, the rule in this jurisdiction is that actions of ejectment deal only with legal titles to land. (*Magoon* v. *Kapiolani Estate, supra.*)

The remaining defense presents two phases of the doctrine of equitable estoppel which may be applicable to the case before us. One is estoppel by conduct (or estoppel *in pais*). The other is the equitable doctrine of part performance. Both phases depend on the evidence relating to the dealings between the defendants and one George Cooke, the president and manager of the plaintiff corporation, who, the jury would have been justified in finding, had the authority to speak for the plaintiff. The dealings consisted primarily of conversations. The defendants are

uncertain in their evidence as to when these conversations occurred in relation to their entry on September 15, 1934, upon the property of the plaintiff at Maalehua at a rental of $50 a month. However, this uncertainty becomes immaterial and without legal significance if the conversations were merely the expressions of future hopes or intentions. In such a case none of the statements made by Cooke to the defendants would be sufficient to give rise to estoppel by conduct. They would be subject to change and withdrawal and therefore of necessity would be uncertain and not final. Consequently, any reliance upon them would have been unjustified and the doctrine of equitable estoppel could not be successfully invoked for the reason that they could not properly form a basis or inducement upon which the defendants could have reasonably adopted any fixed or permanent course of action in respect to the property of the plaintiff. (*Bankruptcy of Spencer,* 6 Haw. 134; *Kapiolani Estate* v. *Thurston,* 17 Haw. 312.)

The record unequivocally shows that the defendants and Cooke dealt with each other on an equal basis, without suggestion of any fiduciary relationship between them. It is manifest from the record, particularly from the evidence of the defendants, that both the parties had at least an equal means of knowledge of all the material facts. If anything, the defendants were in a better position to know, for they were direct participants therein. They were at no time mistaken, misled or deceived as to any material fact or circumstance. There was no fraud or deception alleged or shown. Judged by the decisions of this court the plea of estoppel by conduct wholly fails. (*Kauhi* v. *Keoni Liaikulani, in the Estate of Liaikulani, deceased,* 3 Haw. 356; *Kela* vs. *Pahuilima,* 5 Haw. 525; *Nahaolelua* v. *Kaaahu,* 10 Haw. 18. See also *Goo Kim* v. *Holt,* 10 Haw. 653, and *Peabody* v. *Damon,* 16 Haw. 447.)

In *Kamohai* (*k.*) v. *Kahele* (*w.*), 3 Haw. 530, 531, this court adopted the general rule enunciated by Lord Denman in *Pickard* v. *Sears,* 6 A. & E. (K. B.) 469, 475, as follows: " 'The rule of law is clear that where one by his words, or conduct, wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is precluded from averring against the latter a different state of things, as existing at the same time.' " (*Hayselden* v. *Wahineaea,* 10 Haw. 10; *Haw. Com. & S. Co.* v. *Kahului R. R. Co.,* 12 Haw. 85. See also 31 C. J. Sec. § 59, p. 236, § 67, p. 254.) "In order to [have] an estoppel by conduct, there must have been a representation or concealment of material facts, known by the party to exist, and with the intention of inducing a party, ignorant of the facts, to act upon the representations." *Kamohai* (*k.*) v. *Kahele* (*w.*), *supra,* at 532.

Hence, in the absence of an actual contract or a fiduciary relationship between the parties, estoppel by conduct is not present where the truth is known to both parties or where they have equal means of knowledge. (*Loff* v. *Gibbert,* 39 N. D. 181, 166 N. W. 810; 31 C. J. Sec. § 71, p. 272.)

The mandatory prohibitions of the statute of frauds (R. L. H. 1935, § 3900) apply equally to courts of law and to courts of equity that "No action shall be brought and maintained * * * Upon any contract for the sale of lands, tenements or hereditaments, or of any interest in or concerning them; * * * Unless the promise, contract or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and be signed by the party to be charged therewith, or by some person thereunto by him in writing lawfully authorized." Therefore, it is clear that there is no remedy whatsoever in law afforded to the defendants under

the statute and none in equity unless equitable principles outside of the express language of the statute intervene. Courts of equity consistently have excepted from the operation of the statute of frauds oral contracts for the sale of land where there has been part performance, so-called, of the contract. Such a doctrine, although purely a creation of equity, is also recognized by courts of law as an equitable defense within the more comprehensive doctrine of equitable estoppel. In *Riggles* v. *Erney,* 154 U. S. 244, 254, the doctrine of part performance is set forth in the following language: "Indeed, the rule is too well settled to require further citation of authorities, that, if the parol agreement be clearly and satisfactorily proven, and the plaintiff, relying upon such agreement and the promise of the defendant to perform his part, has done acts in part performance of such agreement, to the knowledge of the defendant—acts which have so altered the relations of the parties as to prevent their restoration to their former condition—it would be a virtual fraud to allow the defendant to interpose the statute as a defence and thus to secure to himself the benefit of what has been done in part performance. It must appear, however, that the acts done by the plaintiff were done in pursuance of the contract, and for the purpose of carrying it into execution, and with the consent or knowledge of the other party." (*Neale* v. *Neales,* 9 Wall. 1 (U.S.); *Armstrong* v. *Kattenhorns,* 11 Ohio 265, 271; *Whitney* v. *Hay,* 181 U. S. 77, 89, 91; *Vierra* v. *Shipman,* 26 Haw. 369.)

Thus the primary thesis of the defendants, that the conversations formed an oral contract which equity will enforce because a refusal to do so would amount to a fraud, must be considered, construing the evidence in a light most favorable to the theory of the defense and weighing the equities in favor of the defendants, if such a contract did exist and they have partially performed it. (See *Morris*

v. *Ballard*, 16 F. [2d] 175, 56 App. D. C. 383, 49 A. L. R. 1461.)

· In their discussions relative to the future sale of the property in question, the defendants expressed to Cooke an ambition to own some day the property in question and a hope that the plaintiff would afford them an opportunity to purchase when they would be ready and able to do so. Cooke responded by saying that such an opportunity would be extended if enough of the plaintiff's directors could be won over to his present view that certain people should own homes on Molokai. The measure for the purchase price was to be the appraised value at the time of future sale. After such a determination, the parties would then negotiate the terms of payment. In this connection, there was no suggestion whatsoever that past payments of rent would apply towards the purchase price when ascertained.

Indeed, the conversations are more worthy of note for what they did not contain than for what they did. It is apparent that many of the usual provisions of contracts for the purchase and sale of real estate were completely omitted. · They did not disclose what the essential terms and conditions of the contemplated contract of sale were to be. No mention was made of the character of deed by which title should be conveyed. The method of appraisal by which the purchase price was to be determined was not disclosed. In that the plaintiff supplied all the water for utility purposes to the property in question, which is arid land, terms and conditions relative to water supply naturally would be factors to be considered before the value of the property could be appraised. Such important particulars were not mentioned nor were other material elements of the contemplated contract considered, such as the terms and conditions of payment of the purchase price, provisions relating to interest, taxes and insurance, to-

gether with the question of default in any payments thereof. Other essential terms were uncertain. The conversations did not specify whether the area to be sold included an adjacent subsistence farm, allotted without additional rental to the defendants by the plaintiff more than a year after their entry to the original area. The time of performance when the contemplated contract of sale would be executed was made dependent upon the uncertain, indefinite and unascertainable time of when the defendants would be ready and able to buy if the opportunity were extended to them.

Construing the conversations, it is significant, in our opinion, that the terms of payment were expressly left to future negotiations. From the nature of the other incomplete and uncertain terms and conditions essential to the validity of the contemplated contract, they also would of necessity have to be settled by future negotiations before a binding contract of sale could be consummated. Consequently, the dealings were incomplete and not concluded. They, in substance, amounted to nothing more than an exchange of present intentions to enter into future negotiations of essential terms of a prospective sale, looking forward to an uncertain time when a contract could be executed, and it is apparent from the record that the contemplated contract was to be bilateral and not unilateral.

Are such mere expressions, not culminating in a binding agreement, enforceable in equity? The defendants answer in the affirmative upon the theory that the expressions, taken together, constituted an oral contract which has been partially performed. However, before the question of performance can arise, such a contract must be found to exist with all the requisites of an enforceable contract in equity had it been in writing. Therefore, those requisites, apart from the statutory requirement of a written instrument, are material in determining whether the

conversations formed the kind of a contract which a court of equity will enforce to escape the prohibition expressed in the statute of frauds. (*Keller* v. *Joseph,* 329 Ill. 148, 160 N. E. 117; *Flannery* v. *Woolverton,* 329 Ill. 424, 160 N. E. 762.)

The contract for the sale of land which a court of equity will enforce must have all the essential requirements of a valid contract at law. It must be binding at law in order to be enforceable in equity. (*Hughes* v. *City of Buffalo,* 134 Misc. 598, 236 N. Y. Supp. 255; *Carns* v. *Puffett,* 44 N. D. 438, 176 N. W. 93; *Carlson* v. *O'Connor,* 79 Ore. 333, 154 Pac. 755.) It must be a concluded or completed contract. (*Sault Ste. M. Land & Imp. Co.* v. *Simons,* 41 Fed. 835; *Terry* v. *Michalak,* 319 Mo. 290, 3 S. W. [2d] 701; *Mercer* v. *Payne & Sons Co.,* 115 Neb. 420, 213 N. W. 813; *Hobelman* v. *Cavallo,* 102 N. J. Eq. 243, 140 Atl. 432; *Venino* v. *Naegele,* 99 N. J. Eq. 183, 131 Atl. 895 [*aff'd* 134 Atl. 920]; *Morgan Realty Company* v. *Pazen,* 102 N. J. Eq. 33, 139 Atl. 712; *Parker* v. *Murphy,* 152 Va. 173, 146 S. E. 254; *Marshall & Ilsley Bank* v. *Schuerbrock,* 195 Wis. 203, 217 N. W. 416.) Any agreement not purporting to give an absolute right without further negotiations thereon is not a contract a court of equity will enforce. Only a contract with no material or essential terms to be settled can be enforced in a court of equity. It must have been completely determined between the parties and its terms definitely ascertainable without resort to future negotiations. (*Peiffer* v. *Newcomer,* 326 Ill. 189, 157 N. E. 240; *Westphal* v. *Buenger,* 324 Ill. 77, 154 N. E. 426; *Baldwin* v. *Corcoran,* 320 Mo. 813, 7 S. W. [2d] 967; *Ansorge* v. *Kane,* 244 N. Y. 395, 155 N. E. 683 [*rev'g* 215 N. Y. Supp. 811, 216 App. Div. 841].) Mere expressions of an intention to convey land at a future time which have not culminated in a binding agreement are not enforceable in equity. (*Flannery* v. *Woolverton, supra.*) The contract must be clear

and certain in all its terms, and where it is incomplete in an important particular a court of equity cannot supply the omission. (*Vierra* v. *Ropert,* 10 Haw. 294; *Tarses* v. *Miller Fruit & Prod. Co.,* 155 Md. 448, 142 Atl. 522; *Wurzweiler* v. *Cox,* 138 Ore. 110, 5 P. [2d] 699.)

The duty of specific performance, which courts of equity enforce, is a reciprocal one. One test of the right to specific performance is that the right must be mutual. (*Herley, Inc.* v. *Harsch,* 61 Ohio App. 260, 22 N. E. [2d] 515.) Each party must have had the right at once to have held the other to a positive agreement. (*Mountain States Power Co.* v. *City of Forsyth,* 41 F. Supp. 389.) It is manifest from the record that the defendants never obligated themselves to purchase. (*Schlegal Mfg. Co.* v. *Cooper's Glue Factory,* 231 N. Y. 459, 132 N. E. 148, 24 A. L. R. 1348.) There is, therefore, a complete lack of mutuality of obligation, an essential of every enforceable contract. There being no fixed or definite purchase price agreed upon, there could not have been any tender to bring the case within the rule laid down in *Morris* v. *Ballard, supra,* nor was it made to appear that the defendants were or would ever be ready and able to perform an obligation to purchase, had there been one. In regard to the latter situation, a failure by the party seeking to establish the enforceability in equity of a contemplated contract, to show his ability, readiness and willingness to perform essential acts required or obligations incurred therein, reflects in itself a fundamental lack of mutuality. (See 58 C. J. § 316, p. 1065; also *Van Name* v. *Federal Deposit Ins. Corporation,* 139 N. J. Eq. 433, 23 Atl. [2d] 261.)

Therefore, it is abundantly clear from all the authorities that mere expressions, not culminating in a binding agreement, are not enforceable in equity, and that, had the conversations been reduced to writing and signed by the plaintiff, they nevertheless would not have formed a

concluded or completed contract nor a contract which a court of equity would enforce. In addition, they would fail to meet the essential requirements of a valid contract at law. Hence, there was nothing for a court of equity to enforce under the rule of specific performance and it follows that an enforcement will not be indirectly accomplished by a court of law under the doctrine of equitable estoppel. (*Beaverton Power Co.* v. *Wolverine Power Co.*, 245 Mich. 541, 222 N. W. 703.)

Consequently, the doctrine of equitable estoppel was unsuccessfully raised as a defense. There was no evidence tending to establish any elements of estoppel by conduct or elements of the doctrine of part performance. The underlying hypothesis of the doctrine of part performance is a subsisting and legally valid contract, enforceable in equity had the contract been in writing, to which any acts of performance must strictly refer, and in reference to which the setting up of the statute of frauds would amount to a fraud.

This court said in *Opunui* v. *Kauhi*, 8 Haw. 649, 650: "The plaintiff claims a possession and part performance of a parol contract to take the case out of the statute. To accomplish this, (1.) 'The terms of the contract must be established by clear, definite and unequivocal evidence and (2.) The Acts relied upon must be exclusively referable to the contract.' "

In conclusion, the trial judge properly rejected as a matter of law the defense of an equitable title. In respect to the remaining defenses under the doctrine of equitable estoppel, it was not a question, as it otherwise would have been, of whether the defendants had sustained their burden of proof (*Hata* v. *Dean Witter*, 32 Haw. 760; see also 31 C. J. Sec. § 160, p. 454), but on the motion for a directed verdict the only question before the trial judge was whether there was present in the record to submit to a jury any

evidence beyond a mere scintilla reasonably tending to prove any facts or circumstances upon which such a doctrine could rest. This was a question of law for the trial judge to decide from the evidence. That he rightly decided it is apparent from the record and the authorities.

The judgment below is affirmed.

*C. B. Dwight* (also on the briefs) for defendant, plaintiff in error.

*R. A. Vitousek* (Stanley, Vitousek, Pratt & Winn on the brief) for plaintiff, defendant in error.