104   361
122   392

## COLUMBUS CASSEL

### *v.*

## ELIZA CASSEL *et al.*

*Filed at Springfield September 28, 1882.*

1. WITNESS—*competency—of a party, against heirs.* A party seeking a decree for the specific performance of an agreement of his father to convey to him a tract of land, after the father's death, as against his heirs, is not a competent witness in his own behalf to prove the contract.

2. SPECIFIC PERFORMANCE—*must be based on contract, and not on expressions of an intent to give.* A specific performance of an alleged agreement of a father to convey a tract of land to his son on the performance of certain conditions, will not be decreed when the evidence, instead of showing any contract of the father on the subject, shows only the expression of an intention or expectation on his part to let the son have the land upon his paying off a mortgage on the same, given by the father, which has not been done, and when the rents and profits of the land have compensated the son for all his outlays in respect to the same.

WRIT OF ERROR to the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding.

Mr. FRANCIS M. WRIGHT, for the plaintiff in error.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in equity, for a specific performance, brought by Columbus Cassel, against the heirs of John Cassel, deceased, to compel the conveyance of a certain eighty acres of land.

The bill sets out, in substance, that John Cassel, in his lifetime, being the owner of the land, and the father of the

complainant, on March 4, 1878, agreed with the complainant that the land should be his upon the conditions that complainant would pay the taxes then due and to accrue on the land, the interest then due, or that might become due, upon a certain mortgage for $1000 on the land, executed by John Cassel to one Jewell, payable in three years from its date, April 2, 1877, with nine per cent interest, and when the mortgage became due would pay or assume the payment of the principal of the mortgage; that thereupon complainant went into the possession of the land, and has ever since occupied the same, and farmed and improved it as his own, making valuable and permanent improvements thereon; that he has paid such taxes and interest, and assumed the payment of the mortgage debt, to the satisfaction of said Jewell, and that on July 15, 1880, the said John Cassel departed this life, without having executed a deed of the land to the complainant, although he was equitably entitled thereto. The defendants answered, making a general denial, and setting up the Statute of Frauds. The circuit court, on final hearing, dismissed the bill, and the complainant took a writ of error.

The testimony of complainant himself, which was taken and objected to, we disregard, as not being competent in such a case, by the express provision of our statute.

The testimony introduced by the complainant in proof of the alleged contract was quite scanty, consisting only of statements of John Cassel, made by him on two different occasions, as testified to by the witnesses Clark and Reed. Clark, who was the father-in-law of complainant, testifies to a conversation had with John Cassel, in which the latter stated that he had bought the land for Columbus, intended it for him, and the latter had gone on it, and was improving it as he liked; that the rents and profits were to be used in liquidation of the mortgage and interest, and expenses on the land, and keeping up the improvements, and on the coming due of the mortgage Columbus was to take the land, pay

this mortgage, and he was to make Columbus a warranty deed of the land.   Mrs. Clark testifies to the same conversation.   Reed, who was the agent of Jewell, who held the $1000 mortgage on the land, testifies that at about the time this mortgage became due, in April, 1880, John and Columbus Cassel came to his office together, for the purpose of having the mortgage extended; that John said he had given the land the mortgage was on, to Columbus, and that witness must thereafter look to the latter for the interest; that Columbus would pay the mortgage, and interest on it until it was paid; that the mortgage was afterward extended to John, first, and after the death of John the extension was changed to Columbus; that John Cassel paid the interest on the mortgage for the first two years, and Columbus paid it afterward. The land appears to have been purchased by John Cassel, in 1876, for the price of $2600.

Without adverting especially to the opposing testimony on the part of the defendants, we think, from all the evidence in the case, that John Cassel intended to let Columbus have the land when the latter paid up the $1000 mortgage which was upon it, and the taxes on the land, but that this rested only in intention and expectation, and that there was no contract upon the subject which can be specifically enforced.   After the death of his father, Columbus executed his agreement for the payment of the mortgage, but this did not release his father's estate from the payment of the mortgage debt. Columbus seems, from the evidence, to have paid but two years' taxes, and to have paid but one year's interest on the mortgage.   He made some improvements, but the proof does not lead us to believe that all the above exceeded the rents and profits of the land which Columbus enjoyed.

We find no ground of equity entitling plaintiff in error to have decreed to him a conveyance of the land, and the decree of the circuit court dismissing the bill must be affirmed.

*Decree affirmed.*