MARY CLARK *et al.*

*v.*

JACOB P. CLARK.

*Filed at Springfield September 27, 1887.*

1. SPECIFIC PERFORMANCE—*parol agreement to convey land—whether established.* The specific performance of a parol contract for the sale of land will not be enforced by a court of equity, unless, in addition to other requirements, such contract is established, by competent proof, to be clear, definite and unequivocal in its terms.

2. Testimony given years after alleged conversations as to what a father said about his intention to give or deed his son a farm, or as to his statements of what he told his son upon that subject, does not establish a clear, definite and unequivocal contract between the father and the son. A court of equity will not execute the expressed intention and expectation of a father to give his son a farm, unless such intention and expectation have ripened into and become embodied in a definite agreement.

3. A father rented a farm to his son in 1878 at a low rent, and the son being dissatisfied, in 1880 threatened to leave the place and go elsewhere, but afterward gave up that intention and continued to occupy the same, making some very trifling improvements for his own benefit, still paying the. same rent, until his father's death, after which he rented the place of the devisee of his father. The proof showed that the father had several times stated that he had given, or intended to give, the farm to him, the son not being

present, except on one occasion, and it did not appear that the son ever held possession other than as a tenant. After his father's death and his renting from the devisee, he filed his bill for specific performance of an alleged parol contract of his father to convey him the land, to which the Statute of Frauds was pleaded by answer, which also denied the contract: *Held,* that the bill could not be maintained.

4. STATUTE OF FRAUDS—*part performance.* Acts relied on to show part performance will not operate to defeat the operation of the Statute of Frauds, unless they are done under the contract itself. If they might have been done with other views, they will not take the case out of the statute. It must appear that the party entered into possession of the land under the contract, and in performance of it, and that he was allowed to make valuable and permanent improvements under his contract of purchase, and not otherwise. If the acts are referable to a tenancy, they will not do.

Appeal from the Circuit Court of McDonough county; the Hon. CHARLES J. SCOFIELD, Judge, presiding.

Messrs. PRENTISS & BAILEY, for the appellants:

Before the complainant can recover, he must prove, by competent evidence, a specific and well defined contract between himself and father, based on a valuable consideration, and that he has complied with the terms of the contract. *Insurance Co.* v. *Rink,* 110 Ill. 538; 1 Story's Eq. Jur. sec. 769.

Before he can recover he must show a legal and binding contract between him and his father,—not a mere promise that his father would give him the farm.

An oral promise to give or devise to a son of promiser a farm then in possession of the former as tenant of the latter, is within the Statute of Frauds, and void, although the son, with the assent of the father, erected buildings on the premises, relying upon such promise. *Smith* v. *Smith,* 78 Am. Dec. 49; *Cassel* v. *Cassel,* 104 Ill. 361; *Forward* v. *Armstead,* 12 Ala. 124; 46 Am. Dec. 246.

No parol contract for the sale of real estate will be enforced unless the vendee goes into possession under the contract; and if his possession is the continuation of a former tenancy, or can be construed as such, the court will hold that he is in

possession under the contract of tenancy, and not under the contract to purchase. *Seymour* v. *Delancy,* 3 Cow. 445; 15 Am. Dec. 270.

The mere possession of the land contracted for will not be deemed a part performance if the vendee be a tenant in possession under the vendor, for his possession is properly referable to his tenancy, and not to his contract. *McCormack* v. *Sage,* 87 Ill. 485; *Johnston* v. *Glaney,* 4 Blackf. 94; 28 Am. Dec. 45; *Wood* v. *Thornly,* 58 Ill. 464.

To take the case out of the operation of the Statute of Frauds, on the ground of part performance, it is indispensable that the acts done relate solely and exclusively to the contract. *Wallace* v. *Rappleye,* 103 Ill. 231.

There is no evidence in the case that Jacob stayed on the farm in pursuance of the alleged contract, except the evidence of Jacob himself, and that is incompetent. *Cassel* v. *Cassel,* 104 Ill. 361.

Mr. C. F. WHEAT, and Mr. D. G. TUNNICLIFF, for the appellee:

That this kind of a contract is one based upon a valuable consideration, is not debatable. It has been so held by every court where the question has arisen.

The question as to the adequacy of the consideration can hardly be said to arise. There is no ambiguity about the contract. Nothing is left to conjecture. Nothing impossible is to be performed, and the evidence is clear, definite and unequivocal.

Payment of the purchase money and taking possession are sufficient to take the case out of the Statute of Frauds. *Ramsey* v. *Liston,* 25 Ill. 114; *Bright* v. *Bright,* 41 id. 97; *Kurtz* v. *Hibner,* 55 id. 514; *Langston* v. *Bates,* 84 id. 524; *Bohanan* v. *Bohanan,* 96 id. 591; *McDowell* v. *Lucas,* 97 id. 489.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a bill filed by appellee in the circuit court of McDonough county for the specific performance of an alleged parol contract for the sale of land. The circuit court decreed the relief asked for, and the case is brought before us by appeal from that decree.

John P. Clark, the father of appellee and eleven other children, owned in his lifetime four hundred acres of land, including eighty acres bought by him in 1878. The eighty acres were situated in Bethel township in said county and known as the Bethel farm. John P. Clark died testate on October 18, 1883. He made a will, dated August 17, 1883, and probated in the county court of McDonough county on October 22, 1883. By his will he gave and devised all his real and personal estate to his widow, Mary Clark, one of the appellants herein and mother of appellee, during her natural life.

Appellee moved upon the Bethel farm with his wife and children on or about April 8, 1878, and lived there from that time until the filing of this bill on December 22, 1884.

The bill alleges, that, in the fall of 1880, John P. Clark agreed with his son Jacob, the appellee herein, that, if the latter would not move to Iowa but would remain on the Bethel farm and give his father one-third of the crop raised thereon so long as his father should live, he, Jacob, should have the farm. This is the contract, which is sought to be enforced.

The contract is, of course, void under the Statute of Frauds because it is not in writing, unless there has been such a part performance as to take it out of the statute. The bill was answered by the widow and five of the sons and one of the daughters of the testator, all devisees under the will, and, in their answers, they deny the making of the contract and plead the Statute of Frauds.

The specific performance of a parol contract for the sale of land will not be enforced by a court of equity unless in addi-

tion to the other requisites hereinafter named such contract is established, by competent proofs, to be clear, definite and unequivocal in its terms.

The evidence in this case shows that in the fall of 1880 some difficulty or misunderstanding occurred between the appellee and his father, as a result of which appellee announced his intention of leaving the Bethel farm and going to Iowa. He changed his mind, however, and remained. A number of witnesses swear, that after this time they heard John P. Clark say that he told his son Jacob that he would "give" him the Bethel farm if he would not go to Iowa. None of them testify that what they thus heard was said in the presence of appellee. A number of other witnesses swear that, after appellee concluded not to go to Iowa, they heard his father say that he was going to "deed" or "convey" the farm to Jacob, or that he told Jacob he was going to deed or convey it to him. Only one of these testifies to hearing anything said upon the subject when appellee and his father were both present; Rebecca Mathena says, that once, in Jacob's yard, Jacob said to her that his father would deed the place to him, and that his father at the time was standing about fifteen or twenty feet away yet made no response and did not confirm the statement of the son.

Testimony, given years after the conversations testified to took place, as to what John P. Clark said about his intention to give or deed his son a farm, or as to his statements of what he told his son upon that subject, does not establish a "clear, definite and unequivocal" contract between him and his son. A court of equity will not execute the expressed "intention and expectation" of a father to give his son a farm, unless such "intention and expectation" have ripened into and become embodied in a definite agreement. (*Cassel* v. *Cassel et al.* 104 Ill. 361.) In *Bailey et al.* v. *Edmunds*, 64 Ill. 125, where this court affirmed a decree of the circuit court of Bond county dismissing a bill for the specific performance of an alleged

verbal agreement by a father, the defendant, to convey one hundred and ninety acres to his daughter, one of the complainants, testimony was introduced of a similar character to that which appears in this record. In the opinion in that case the following language is used: "Aside from the testimony of the complainants, there is no evidence of the alleged contract save statements of the defendant, testified to by quite a large number of witnesses in different casual conversations had with him, to the effect that he had given, or intended to give, or that he had conveyed, or would convey, to his daughter the land on which she lived."

It is not claimed or pretended that appellee ever paid his father a dollar of money, or performed for him the labor of a single day, towards the purchase of the farm. He was not to pay any taxes nor did he pay any either before or after his father's death. He was to give his father one-third of the crops raised upon the land during the old man's life. But by doing so he merely paid what was less than a fair rent for the farm. The testimony is uncontradicted, that the eighty acres could easily have been rented for two-fifths of the crop. When appellee was making his arrangements to go to Iowa, John P. Clark actually rented the place to one William Miller upon an agreement that the latter should give two-fifths of the grain raised.

Appellee was not materially injured by a failure to perform the alleged contract. Nor does the testimony show any such acts of performance on his part as would compel him to suffer an injury amounting to a fraud, in case the supposed contract should not be executed. (*Wallace* v. *Rappleye*, 103 Ill. 229; *Wood* v. *Thornly*, 58 id. 464.) It does appear, that, when he was preparing to go to Iowa in September, 1880, he sold some of his property. He sold his crop and his wagon to his brother, Silas. The crop, however, he did not deliver, and, when he concluded to give up going to Iowa, his brother returned the wagon to him. He sold a span of colts, but he received for

them all they were worth. He also sold some hogs, but it does not appear that he sold them at a sacrifice. Whether he made these sales of property by reason of his father's refusal to perform the contract, or whether he abandoned his intention of seeking a home in Iowa by reason of his father's promise to execute the contract, we can not see that, in either case, he lost anything. He had the farm from April, 1878, to September, 1880, for one-third of the crops, and he continued to have the farm for one-third of the crops from September, 1880, to his father's death.

It is said, that the contract is taken out of the Statute of Frauds, because appellee went into possession of the land and made valuable improvements thereon. Acts relied on to show part performance will not operate to defeat the Statute of Frauds, unless they are done under the contract itself and for the purpose of performing it. If they might have been done with other views, they will not take the case out of the statute, since they can not properly be said to be done by way of part performance of the agreement. It must appear that the party entered into possession of the land under the contract itself and in performance of it, and that he was allowed to make valuable and permanent improvements under his contract of purchase and not otherwise. *Wood et al.* v. *Thornly,* 58 Ill. 464.

We think the evidence in this case shows that appellee went upon the land in 1878 as a tenant of his father under an agreement to pay one-third of the crops as rent. His possession was originally taken under this tenancy and not under any contract of sale. His possession after 1880 will be presumed to have been a mere continuation of his former occupation as lessee. It is "properly referable to his tenancy and not to the contract." 1 Story's Eq. Jur. (12th ed.) sec. 763. The proof of a contract is not so clear as to establish a change in the character of the occupancy after 1880. The evidence

is not conclusive that what was the possession of a tenant before that date became the possession of a vendee thereafter.

As to the improvements they were not lasting or valuable. When appellee went upon the land in 1878, there were upon it a house, a stable and fencing. He built what is called a porch on one side of the house; its columns were mere poles; its floor consisted of oaken boards laid upon the ground; its roof was shingled with shingles belonging to his father. He built an addition to a granary to be used for a milk house; in size it was eight by ten feet, and it had a shed roof made of boards sawed from logs out of his father's timber. The porch and milk house together were not worth over $15. He also dug a well in a slough for the purpose of getting water for his cattle and walled it with rock taken from his father's land. The improvements were such as any tenant, expecting to occupy a farm for a number of years, would make for his own convenience.

The conduct of appellee himself is opposed to the idea that he was occupying the land under an agreement that it was to be deeded to him. He says he became angry with his father in the fall of 1880 and threatened to leave and go to Iowa, because his father had often before that time promised to deed the farm to him and had not fulfilled his promise. Yet, according to his own admission, he gave up the trip to Iowa, and received nothing for remaining except the same promises that he had already become dissatisfied with. Several witnesses testify that the real cause of the trouble between him and his father was his refusal to give the old man the full share of one-third of the crop to which the latter was entitled as rent for the farm, and that his father did nothing more to induce him to stay than to agree to let him have the farm on the same terms as before.

John P. Clark seems to have been confined to his house by sickness for about two months before he died, and yet appellee

does not appear to have said one word to him during that time about the execution of a deed of the farm.

Mrs. Clark, appellee's mother, swears, that in the fall of 1884 about a year after her husband's death, appellee came to her and wanted to rent the farm of her upon the same terms, upon which he had rented it of his father, and she told him he could have the place as long as he gave her one-third of the crop. She is confirmed by the testimony of several witnesses, who swear that, when appellee was threshing grain in the fall of 1884, he divided it so that one-third thereof should be separated from the other two-thirds, and stated, when he did so, that his mother was to get the one-third as rent, and he was himself to keep the rest. Why recognize his mother as landlord, if the land was his own? He did not file this bill, until his mother attempted by a distress warrant to collect the rent, which he failed to pay according to his agreement with her.

The decree of the circuit court is reversed with directions to dismiss the bill.

*Decree reversed.*

Mr. JUSTICE CRAIG, dissenting.