CLARA G. GEER *v.* CAROLYN W. GOUDY,

and

IRA J. GEER *v.* CAROLYN W. GOUDY.

*Opinion filed October 24, 1898.*

1. STATUTE OF FRAUDS—*performance must be shown to take oral contract out of the statute.* To warrant the enforcement, in equity, of a parol contract for the conveyance of land, such a performance on the part of the promisee must be shown as will take the contract out of the operation of the Statute of Frauds.

2. SAME—*courts require strict proof after death of both parties to oral contract.* An alleged oral promise by a father to convey land to his son will not be enforced by a court of equity after the death of both parties, unless the court is well satisfied of the existence and character of the promise and of the substantial justice of the demand for the exercise of its powers.

3. SAME—*mere taking possession of land does not take contract out of statute.* Equity will not enforce a parol promise by a father to convey land to his son unless the promise has been acted upon by the latter, not only by taking possession, but by the expenditure of his money thereon and by the making of lasting and valuable improvements thereon with the knowledge and consent of the promisor.

4. SAME—*expenditure of promisor's money is not a part performance.* The expenditure of the father's money in making valuable improvements upon land which he is alleged to have verbally promised to convey to his son is not such a part performance as satisfies the requirements of the Statute of Frauds, even though the son is in possession of the land.

5. EVIDENCE—*wife cannot testify to declarations of deceased husband during coverture.* A wife cannot testify as to declarations by or conversations with her husband during coverture, although the marriage relation has been severed by death or divorce.

6. SAME—*loose declarations by promisor not satisfactory proof.* An alleged parol promise by a father to convey land to his son must be established by clear, definite and unequivocal proof, particularly after the death of both parties, and loose declarations by the father to third persons, such as designating the land as his son's without any explanation sufficient to evidence a gift, are not sufficient.

7. The court reviews the evidence in this case at length, and holds that it is not sufficiently clear to warrant a finding that an oral promise to convey existed, or that the money used in making valuable improvements on the land was the money of the promisee.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

This is a bill, filed in the court below by Carolyn W. Goudy, sole devisee under the will of her deceased husband, William J. Goudy, who is alleged by her to have acquired the title to the premises hereinafter referred to by gift from his father, William C. Goudy, against Clara G. Geer and Ira J. Geer, her husband, for the purpose of compelling the execution by Clara G. Geer of a quit-claim deed, conveying to Carolyn W. Goudy an undivided one-half interest in certain premises situated on the northwest corner of Astor and Goethe streets in Chicago; the said Clara G. Geer holding the title to such undivided one-half interest as one of the devisees of William C. Goudy, deceased, who at his death left by his will the residue of his estate to said Clara G. Geer, considered and treated as his daughter, and to his son, William J. Goudy, in equal shares. Ira J. Geer, the husband of Clara G. Geer, having upon his petition been made a party defendant as executor of the will, answered the original bill denying the material allegations thereof; and also filed a cross-bill which was answered by the said Carolyn W. Goudy. Clara G. Geer filed a separate answer to the original bill, denying that there was any gift of the premises by William C. Goudy to William J. Goudy, or any promise made by William C. Goudy to convey the premises to the said William J. Goudy. The answers in the case set up and rely upon the Statute of Frauds. Replications were filed to the answers. An amendment was filed to the original bill; and the answers of Clara G. Geer and of Ira J. Geer, individually and as executor, were ordered to stand as answers to the bill as amended. The cause came on for hearing before the chancellor upon evidence taken before a master, and upon proofs presented in open court; and the court made a decree, directing that the appellants, Clara G. Geer and Ira J. Geer,

execute and acknowledge a quit-claim deed conveying the premises in question to the appellee, Carolyn W. Goudy, subject to the incumbrance hereinafter mentioned for $15,000.00. In its decree the court dismissed the cross-bill of Ira J. Geer, as executor, for want of equity. The present appeal is prosecuted from the decree so entered by the circuit court.

The facts as shown by the pleadings and evidence are substantially as follows:

William C. Goudy, who in his lifetime was a practicing lawyer in the city of Chicago, died testate on April 27, 1893, leaving him surviving his widow, Helen Judd Goudy, and William J. Goudy, his son and only child. He and his wife, some years before the birth of their son, took into their family to live with them Clara G. Carr or Clara G. Phillips, a grand-niece of Mrs. Goudy, who was always treated by them as a daughter, although not formally adopted, and was always called Clara G. Goudy. She was so taken into the family when she was quite a child, and never knew that she was not the daughter of William C. Goudy and his wife until after she was grown. In June, 1887, Clara G. Goudy married Ira J. Geer, one of the appellants herein. In December, 1887, William J. Goudy, being about twenty-four years of age, married Carolyn Walker, the present appellee and now named Carolyn Goudy.

On June 10, 1889, William C. Goudy purchased from John W. Root the premises in question for $13,520.00, of which $6415.73 was paid in cash, and the balance, amounting with interest to $7231.90, was paid in December of the same year in discharge of a mortgage which he had assumed. A warranty deed, dated June 10, 1889, was executed by John W. Root and wife to William C. Goudy. In the summer of 1890 the erection of a dwelling house and stable upon the said premises was commenced under the superintendence and direction of the son, William J. Goudy. The dwelling house and stable were finished

about the month of May, 1891, at a cost of $53,684.07. The bill of the appellee, as originally filed and as amended, alleges that the premises in question were purchased by William C. Goudy, a man of ample means, for the purpose of providing his only child with a home for himself and family, and that, immediately after the purchase thereof, he gave the same to the said William J. Goudy, and put him in possession thereof as owner, promising thereafter to make a deed thereof to William J. Goudy to evidence such ownership; that William J. Goudy went into possession thereof as owner, and proceeded to erect a dwelling house and stable thereon; that he gave his own personal time and attention to erecting the same; that all contracts for the erection of the building were made by William J. Goudy in his own name, and all payments therefor were made by him with his own money; and that all of such facts were well known to William C. Goudy. When the house and stable were finished in May, 1891, William J. Goudy with his wife and child moved into the same, and occupied the same until his death on May 26, 1894. While the house and stable were being erected on the lot at the corner of Astor and Goethe streets purchased from Root and called in the record the "Root lot," William C. Goudy was building another house on Goethe street, on the opposite side of the street and to the east of the Root lot, as a home for himself and his wife, where the appellants, Clara G. Geer and Ira J. Geer, her husband, lived with him and his wife until his death.

William C. Goudy in his will, dated July 22, 1891, after leaving certain legacies to his niece and his sister and a brother, made the following provisions: "I devise and bequeath to my wife, Helen Judd Goudy, the homestead No. 240 Goethe street, Chicago, * * * the dwelling house and stable thereon, together with all the furniture, pictures and ornaments, carriages, horses, harness, etc., in and on said premises, to use for and during her lifetime. If she desires to lease the homestead she may do so and

have the net rent as her own. If she chooses to sell any of the furniture, carriages, horses or stable furniture she may sell and purchase others with the proceeds, or keep the money received therefor as her own. In addition to the foregoing provision, I direct my executors to pay to my said wife $500.00 in each and every month, making in the aggregate $6000.00 per year. This amount is to be paid from my estate whether the income amounts to enough or not. If the income is insufficient then principal is to be used, and if money is not on hand then it is to be raised by the sale or mortgage of property. Subject to the foregoing provisions, I devise and bequeath all of the rest and residue of my estate, real and personal, money, stocks, evidences of indebtedness and securities, to my son, William Judd Goudy, and my daughter, Clara Goudy Geer, each to be entitled to one-half, as nearly as it is practicable to divide the same. In case of the death of my son in my lifetime and I make no further provision by will, then his share is to go to his child or children; and in a like contingency as to my daughter, then her share is to go to her child or children. But in such an event it is my wish that $25,000.00 in money or property be deducted from the share going to my son, his child or children, and given to his wife, Carolyn; and from the share going to my daughter's child or children, a like deduction be made and given to her husband, Ira J. Geer."

The will makes the son, William J. Goudy, and the son-in-law, Ira J. Geer, executors, and confers upon the said executors certain powers in the following words: "I give to them, or the survivor in case of the death, resignation, or inability of the other to act, full power to manage the estate, to collect debts, to sell and convey real or personal property, to bring suits, to compromise disputed matters, to invest and re-invest money, and in general to exercise a discretion in the management of the estate, subject to the provisions of this will in favor of my wife." In June, 1887, William C. Goudy conveyed to

the appellant, Clara G. Geer, under the name of Clara G. Goudy, certain premises in Argyle, a suburb of Chicago, for an expressed consideration of $9000.00. This conveyance was made to her just before her marriage to Ira J. Geer. In the same month William C. Goudy conveyed to his son, William J. Goudy, certain other premises in Argyle for an expressed consideration of $9000.00, which was done a few months before the marriage of said William J. Goudy to the appellee. Before his marriage in December, 1887, William J. Goudy had become the junior member of the law firm of Goudy, Green & Goudy, of which his father, William C. Goudy, was the senior member, and continued to be a member of that firm until about 1892. His income from the firm was not more than $3000.00 per annum; and from the rents of certain properties he received about $1100.00 per annum in addition.

When William J. Goudy died on May 26, 1894, he left him surviving the appellee, Carolyn W. Goudy as his widow, and Helen Goudy as his daughter and only child. He left a will giving, devising and bequeathing all his property, real and personal to his wife, the appellee herein. After the death of William J. Goudy, the appellee continued to occupy the premises at the corner of Astor and Goethe streets, here in controversy, for about a year, and then rented the same, together with the furniture in the house, for about $4000.00 per annum. It was rented at the last named figure when the present bill was filed. All the improved property left by William C. Goudy, except two houses, was heavily encumbered; the rest of his estate consisted mostly of vacant land in and about Chicago. It is conceded, that the houses in Argyle, conveyed to the appellant, Clara G. Geer, and to William J. Goudy, deceased, in 1887, were gifts to them from William C. Goudy.

Such other facts as are necessary to be set forth, in order to understand the questions involved, are stated in the opinion of the court.

SMITH, BLAIR & SMITH (GEORGE W. SMITH, of counsel,) for appellant Clara G. Geer.

CUSTER, GODDARD & GRIFFIN, (J. R. CUSTER, of counsel,) for appellant Ira J. Geer.

GREEN, ROBBINS & HONORE, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The bill, filed in this case, seeks to enforce the specific performance of an oral promise to convey land, alleged to have been made by a father to his son. The appellee asserts, that William C. Goudy purchased the lot at the corner of Astor and Goethe streets in Chicago for his son, and gave it to the latter, and put him in possession thereof, and promised to convey the same to him. It is admitted, that no conveyance was actually made by William C. Goudy to his son, and that William C. Goudy died holding the legal title to the property. The appellants in their answers have pleaded the Statute of Frauds. Wherever there is a parol contract for the conveyance of land, or an oral promise by a father to his son to convey land, such a performance of the contract or promise must be shown as will take the contract or promise out of the Statute of Frauds. That statute establishes a wholesome and salutary rule by requiring written evidence of contracts for the sale of land; and, in its practical operation, the rule conduces rather to the prevention of wrongs than to the infliction of injuries. In special instances it may seem hard and inequitable; but, in its general application, it prevents fraud and perjury. The courts have no right to construe it so as to destroy its meaning. (*Wood* v. *Thornly*, 58 Ill. 464).

Here, both the father and the son are dead. The present bill is not filed by the son against the father to enforce an oral promise, but it is filed by the widow and devisee

of the son, not for the purpose of obtaining a conveyance from the father's executor, but for the purpose of obtaining a conveyance from a devisee under the father's will. When a court of equity is called upon to decree the specific performance of a parol agreement, or an oral promise to convey land, alleged to have been made between father and son after both are dead, the court must be well satisfied of the existence and character of the agreement or promise, and of the substantial justice of the claim to the exercise of its powers. In order to take a case out of the operation of the Statute of Frauds, a parol contract or oral promise to convey land should be clear and certain in its terms, and should be established by testimony of an undoubted character, which is clear, definite and unequivocal. Equity will not enforce the promise of a gift of land by the father to the son, unless the promise has not only been acted upon by taking possession of the land, but also by the expenditure of money and the making of valuable and permanent improvements with the knowledge and consent of the promisor. (*Shovers* v. *Warrick*, 152 Ill. 355; *Wood* v. *Thornly*, 58 id. 464).

In the present case, the allegation of the bill is not that William C. Goudy made an oral contract with his son to convey the premises in question to him, but that he promised to convey the premises to him. It is not only true that, in order to enforce in equity a parol contract to sell land, it must appear that the vendee has taken possession under the contract and made lasting and valuable improvements and paid the purchase money, but it is also true, that a promise, made by a father to a child to convey a tract of land if the child will take possession thereof and improve the same, will not be enforced, unless such promise is followed by the expenditure of labor and money and the making of lasting and valuable improvements, as well as by the taking of possession. Otherwise such a promise cannot be regarded as resting upon such a valuable consideration as will

justify a court of equity in upholding and enforcing it. All the authorities agree, that such a promise must be established by proof which is clear, definite and unequivocal. Mere declarations made by the promisor or donor to third persons do not constitute such clear, definite and unequivocal testimony. (*Worth* v. *Worth,* 84 Ill. 442; *Langston* v. *Bates,* id. 524.)

It cannot be said in this case, that there is any clear and satisfactory evidence of a promise, made by William C. Goudy to his son to convey to him the premises in question. Mrs. Helen Judd Goudy, the widow of William C. Goudy, was placed upon the stand in the court below, and permitted to testify as to certain declarations made by her husband to her in his lifetime. This testimony was incompetent. Neither the husband nor the wife can testify to communications and conversations occurring between them during coverture. Such was the rule at common law, and such is the rule in this State, as laid down by this court in the construction of the statute in relation to evidence. This inability of the husband or wife to testify continues as to the communications and conversations between them, after the marriage relation is severed, whether such severance be by divorce or by death. (*Goelz* v. *Goelz,* 157 Ill. 33).

The testimony of Mrs. Goudy being out of the way, there remains nothing but proof by outside parties of remarks made upon this subject by William C. Goudy. Several witnesses swear, that they heard Mr. Goudy say that he was going to buy a lot for his son, and that he was building a house for his son, or that he had built a house for his son. One or two witnesses say that he spoke of the house as his son's house. None of these witnesses heard anything said by William C. Goudy in the presence of his son with reference to the ownership of said house. Where such a promise is alleged to have been made by a father to a son, the witnesses must have heard it when it was made, or must have heard the parties repeat it in

each other's presence. A contract is not to be inferred merely from the declarations of one of the parties, because, if such were the rule, a contract might be enforced against one party and not against the other. (*Clark* v. *Clark*, 122 Ill. 388; *Edwards* v. *Morgan*, 100 Pa. St. 330; *Ackerman* v. *Fisher*, 57 id. 459.)

In addition to the testimony of witnesses as to declarations of the character already stated which were made by William C. Goudy in the absence of his son, two witnesses were produced to testify to remarks, alleged to have been made by William C. Goudy in the presence of his son. While the house upon the premises in question was in the course of erection, Mr. Goudy occasionally stopped to examine the work. This, however, was only during the earlier period of the construction. A superintendent, representing the architect of the building, says that, upon one occasion, he heard a discussion between William C. Goudy and his son concerning the grade to be established, and concerning some proposed connection of the house with the building on the north; and that there seemed to be some difference of opinion between them, which led the father to remark: "It is your own house; I suppose you can do as you please." Another witness, who was a foreman and had charge of the masonry work, testified to a discussion between the father and son, in which they differed with each other, and says that he heard the father say in a tone of dissatisfaction: "Do what you please, it is your own house and you have got to pay for it;" and again, "This is the kind of work you get for the big price you pay for this house." We do not regard such evidence as this as conclusive proof of a promise or agreement on the part of the father to convey the house to the son.

The nature of the relation, which exists between a parent and child, requires a contract between them to be proved by a different kind of evidence from that which is sufficient as between strangers. In *Poorman* v. *Kilgore*,

26 Pa. St. 365, the Supreme Court of Pennsylvania said: "It is so usual and natural for parents to help their children by giving them the use of a farm or house, and then call it theirs, that no gift or sale of the property·can be inferred from such circumstances. It is so entirely usual to call certain books, or utensils, or rooms, or houses, by the name of the children who use them, that it is no evidence at all of their title as against their parents, but only a mode of distinguishing the rights which the parents have allotted to their children as against each other, and in subjection to their own paramount right." The fact, that a father puts his son in possession of land with the expectation of giving it to him some day, is not conclusive evidence of a gift of the land. (*Cox* v. *Cox*, 26 Pa. St. 375). It is the presumption in all such cases, that the use and possession are permissive. The ownership is that of the parent, who simply permits or suffers the use and possession by the child. (*Erie & W. Co.* v. *Knowles*, 117 Pa. St. 77). In *Harrison* v. *Harrison*, 36 W. Va. 556, it was said: "Neither are loose declarations of the father calling the land the son's property, without explanation, sufficient evidence of a gift. A contract between father and child, from the nature of the relation, requires to be proved by a kind of evidence very different from that which might be sufficient between strangers. The evidence in such case of a parol gift from father to child should be direct, positive, express and unambiguous, and its terms clearly defined." In addition to this, where a gift is intended, such a gift must be complete; and where the alleged gift is of a legal estate, capable of legal conveyance, which is not made, the gift is revocable. (*Wadhams* v. *Gay*, 73 Ill. 415; *Allen* v. *Webb*, 64 id. 342; *Gosse* v. *Jones*, 73 id. 508; *Shaw* v. *Schoonover*, 130 id. 448; *Hugus* v. *Walker*, 12 Pa. St. 173). In the latter case of *Hugus* v. *Walker* it was held, that loose declarations of a father to his neighbors, calling land in the possession of his son his son's property, without any explanation how such

land came to be his son's, were not sufficient evidence of a gift. "A mere intention, though expressed as to a future deed of a man's property, creates no legal obligation upon him to carry out that intention, and until the intended gift is made, he may change his mind respecting it." (Thornton on Gifts and Advancements, sec. 375). In *McCartney* v. *Ridgway*, 160 Ill. 129, we said (p. 156): "To constitute a valid gift *inter vivos*, possession and title must pass to and vest in the donee, or in a trustee for the donee. If anything remains to be done to complete the gift, what so remains to be done cannot be enforced, as it is based upon no consideration; and, when the gift is thus incomplete, there is a *locus pœnitentiœ*, and the gift may be revoked. Where the alleged gift is of a legal estate capable of legal conveyance, and no conveyance is made, the gift is revocable."

But even if the testimony in this case be regarded as sufficient to establish an oral promise on the part of the father to give the premises in question to the son, the evidence does not show such a part performance of the promise as will take the case out of the Statute of Frauds. It is true, that the son went into possession of the house, and occupied it as a home. Such possession and occupation were entirely consistent with a permission on the part of the father to the son to use the house without any intention of making him the owner thereof. It must appear, that the son expended money, or made valuable improvements upon the property with his own money, in order to justify a court of equity in enforcing the promise or contract. The evidence in the present case is satisfactory to our minds, that the money, with which the improvements upon these premises were made, was the money of William C. Goudy, and not of William J. Goudy. Where the son goes into possession of property owned by the father, and the improvements made thereon are paid for with the money of the father and not of the son, there is not such part performance as satisfies the requirements

of the Statute of Frauds. (*Allen* v. *Webb, supra; Ackerman* v. *Fisher, supra; Eyre* v. *Eyre,* 19 N. J. Eq. 102). In all the cases where the acts of part performance are held to be sufficient to take the case out of the Statute of Frauds, the means of the donee or promisee and not the means of the donor or promisor were used to pay for the improvements.

The facts upon this branch of the case are as follows: William C. Goudy had a bank account with the Commercial National Bank of Chicago, where he deposited his money. On July 22, 1890, he sent to the cashier of the bank the following communication:

"*Mr. J. B. Meyer, Cashier:*

"DEAR SIR—Mr. W. J. Goudy, my son, is authorized to draw checks in my name on my account.

Yours,                    W. C. GOUDY.

"Signature—W. C. Goudy, by W. J. G."

After the authority was thus given to William J. Goudy to draw checks upon his father's bank account, and sign his father's name thereto by himself as agent, William J. Goudy began to draw checks; and between September 18, 1890, about the time the erection of the house and stable upon the premises in question was begun, and January 22, 1892, he had drawn out $61,064.07. The stubs of the check books, from which the checks so drawn were torn, had minutes in them as follows: "House on Root lot," and "House Root lot." These minutes upon the stubs, corresponding to the checks, showed that the money was drawn out for the purpose of the erection of the house on the "Root lot." The entries upon the stubs are in William J. Goudy's handwriting, except in the case of two stubs and checks, which were in the handwriting of William C. Goudy. These checks, drawn in the name of William C. Goudy, were payable to the order of William J. Goudy.

William J. Goudy deposited all the checks, which he thus drew, to his own account in a bank account opened by himself. When he paid the contractors and material-

men for the work and labor performed on the premises, he paid them with checks upon his own account in the bank. But his own account consisted of checks drawn upon his father's account, which, after being deposited in his own name, were paid by his father's bank. Between September 18, 1890, and August 4, 1891, he had paid out, in checks drawn by himself to the order of persons furnishing labor and material upon the premises in question, the sum of $53,684.07. It thus clearly appears, that all the money, which was paid for the improvements made upon the premises, belonged to William C. Goudy. Why William J. Goudy drew the checks in his father's name payable to his own order and then deposited them to his own account, and afterwards gave checks drawn by himself on his own account to the various parties doing work upon the premises, instead of drawing checks upon his father's account in favor of the parties doing the work, is not satisfactorily explained in the evidence. But whatever may have been the reason for having two accounts instead of one, it is nevertheless true that William J. Goudy was not the owner of the money thus used. It can not be said, that there was a gift of the money by his father to him, but he was merely permitted to draw the money, as his father's agent; and the minutes upon the stub-books show, that he appropriated it to the construction of the house in question. He drew other moneys, besides those already referred to, in his father's name and upon his father's account. Between February 16, 1891, and March 20, 1893, he drew other checks upon his father's account to the amount of $26,610.00. These checks were all drawn to the order of William J. Goudy by himself in the name of William C. Goudy, except the last one drawn by William C. Goudy; all are endorsed for deposit to the account of William J. Goudy, and stamped paid. Besides these, still other checks were drawn by William J. Goudy upon said bank upon the account of William C. Goudy. Between November 23, 1889, and Janu-

ary 11, 1892, other checks were so drawn to the amount of $7550.00, all to the order of himself by William J. Goudy, in the name of William C. Goudy, and were all deposited to the account of William J. Goudy. The stubs show, that the sums going to make up the amount of $7550.00 were loans to William J. Goudy. There is no evidence showing the settlement of accounts between father and son.

In addition to the fact, that the improvements made upon the property were made with the money of William C. Goudy, there is other evidence, tending to show that William. C. Goudy regarded himself as the owner of the premises in question. He may have intended at some time to convey these premises to his son, but such intention was not executed during his lifetime, and the proof is quite strong to the effect, that the time had not arrived, before he died, when he had made up his mind that it was prudent to make a deed to his son.

When the deed was originally made of the "Root lot" to William C. Goudy by John W. Root, it was made out to William J. Goudy as grantee. But "for some reason it was changed and the property was deeded to Mr. Goudy." It would thus appear that the father purposely had the title conveyed to himself, rather than to William J. Goudy. If, as is contended by appellee, the lot was originally bought for William J. Goudy, it is difficult to understand why the title was not conveyed to him. By taking the title himself William C. Goudy intended to be the owner. The deed as finally made out to William C. Goudy was in the handwriting of William J. Goudy. On September 1, 1890, about the time when the erection of the house and stable was begun, William C. Goudy executed a party wall agreement with one Nettie B. Mitchell as owner of the adjoining premises. In this agreement William C. Goudy describes himself as owner of the premises in controversy; and the instrument contains the usual covenants of ownership and possession in reference to the building being erected by William C. Goudy on the prem-

ises. This is a second instance, in which he puts himself on record as owner of the property. Again, on May 30, 1891, about the time when the improvements upon the premises were finished and his son had taken possession, or was about to take possession as the occupant thereof, William C. Goudy and his wife executed a trust deed, conveying the premises to Francis P. Peabody to secure William C. Goudy's note for $15,000.00 due in two years. This trust deed, signed by William C. Goudy, contains covenants by him, as grantor, as to title, ownership and possession in himself. He therein covenants, that he is well seized of the premises as of a good, sure, perfect, absolute and indefeasible estate of inheritance in the law in fee simple, and has good right, full power and lawful authority to grant, bargain, sell and convey the same, etc. To our minds, the execution of this trust deed seems strong proof of his intention to retain the ownership of the property.

But this is not all. Between September 18, 1890, and May 26, 1891, William J. Goudy had drawn checks upon his father's account, and taken out money from the bank belonging to his father, to the amount of $45,489.35. During this period he paid out of these moneys upon the improvements the sum of $40,532.11, the payments so made being made by checks drawn on his own account formed by the deposit of checks drawn on his father's account, which were paid. The sum of $4957.24 appears not to have been applied towards the construction of the buildings upon the premises. What was done with it is not shown by the evidence. The last check, drawn upon William C. Goudy's account going to make up the sum of $45,489.35, was dated May 26, and was for the sum of $1909.89. It is not shown, whether or not William C. Goudy's account was thus exhausted on May 26, 1891. It does appear, however, that on May 30, 1891, he borrowed $15,000.00 upon the premises in question. After this loan was made, and between June 6, and June 13,

1891, inclusive, William J. Goudy drew out by checks upon his father's account the sum of $11,532.14. In addition to this, on June 18, 1891, William C. Goudy himself drew a check on his account to the order of his son for $3000.00 which was deposited by William J. Goudy in his own account. On June 28, 1891, William C. Goudy himself drew another check for $1000.00 payable to the order of his son, which was also deposited by William J. Goudy in his account. It is thus clear, that, between June 6, and June 28, 1891, William J. Goudy drew out of the bank, upon checks drawn by himself and by his father, $15,532.14, being an amount in excess of the loan made on May 30, 1891. On July 2, 1891, four days after this sum of $15,000.00 had been exhausted, or an amount equivalent to that sum had been exhausted, William C. Goudy made his will. In that will he treats his adopted daughter, Mrs. Ira J. Geer, and his son, William J. Goudy, exactly alike. After making certain provisions for certain relatives and for his wife, he gives the residue of his estate to his daughter and son equally. He makes no mention whatever in his will of any gift or intended gift of the premises in question to his son, William J. Goudy. By the terms of his will, the premises in question passed equally to Mrs. Geer and to William J. Goudy. As a lawyer, he must have known the effect of his will in this regard. He had always treated Mrs. Geer exactly as a child, and his treatment of her had not been different from his treatment of his son. His letters to her, which are in the record, are full of affection and tenderness and kindness. He addresses her as his daughter. When, at the age of twenty years, she first learned that she was not his daughter, she wrote him a letter indicating sorrow and surprise. His reply is full of the tenderest sympathy and emotion, telling her that she will always be a daughter to him, and will be treated by him with the same affection as he shows towards his son. When his daughter and son were married in 1887, he gave each of them

a house and lot, putting the same consideration in each deed. His will, as set forth in the statement preceding this opinion, shows the same care on his part to put his son and his daughter upon an equality, so far as their interests in his estate are concerned. In view of these facts, it seems almost impossible to believe that, if Mr. Goudy had intended this property to be the property of his son exclusively, and not to pass under the provisions of his will just as the rest of his estate passed, he would not have made some mention in his will of the gift to his son. He held the title to some real estate in New York for the use of one Doud, and in his will he directs that such real estate be conveyed to such person as Doud wishes. If he held the premises in question in trust for his son, it would have been natural to direct that such premises be conveyed to his son.

Besides all this, the taxes for 1890 and 1891 were paid by William C. Goudy, and not by William J. Goudy. In *Gosse* v. *Jones, supra,* which was a bill in equity to compel the specific performance of an alleged parol contract for the sale of land, it appeared that the vendee, who had used the land for a number of years, paid no taxes upon it; and we there said: "The latter is pretty strong evidence that a party paying taxes on a lot of land has some claim to it as owner." It is a strong presumption, that the party paying the taxes on land is the owner thereof. (*Worth* v. *Worth, supra; Galloway* v. *Garland,* 104 Ill. 275; *Fairfield* v. *Barbour,* 51 Mich. 57; Thornton on Gifts, sec. 393).

Our conclusion is, first, that the evidence of a parol promise to convey is not so clear, certain and unambiguous as to enable us to find that there was such a promise; and second, that the evidence is not sufficient to show such expenditure of money or such making of valuable improvements upon the premises in question by William J. Goudy, as to constitute the part performance, which the authorities hold to be necessary to take the case

out of the Statute of Frauds. We are, therefore, of the opinion that the decree of the court below is erroneous.

Accordingly, the decree of the circuit court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.                *Reversed and remanded.*