IONA BAKER *et al.*

*v.*

ELMER ALLISON.

*Opinion filed October 19, 1900.*

1. CONTRACTS—*when parol agreement to convey will be enforced.* A parol agreement by a father to convey a lot to his son will be enforced where the proof shows that the transaction was not a gratuity but a business arrangement for value, under which the son took possession and made valuable improvements at his own expense and with the knowledge and consent of his father, who ceased to exercise control or ownership over the property.

2. PLEADING—*when plea of Statute of Limitations has no basis.* A plea of the Statute of Limitations interposed by parties out of possession, and against whom, and those in privity with them, the opposite party holds adversely, has no basis on which to rest.

APPEAL from the Circuit Court of Vermilion county; the Hon. F. BOOKWALTER, Judge, presiding.

Appellants exhibited their bill in equity, alleging they, together with appellee, were the owners in common of lot 22 in Tincher & English's third addition to the city of Danville, as the only children and heirs of W. H. Allison, deceased, each an undivided one-fourth part in fee, and asking for an accounting of rents by appellee on account of use and occupancy by him of the premises since the death of his father, March 23, 1895. The Dan-

ville Building Association was made a party, who answered that on August 11, 1894, Elmer Allison obtained a loan on two shares of stock and a mortgage on the premises in question for $200, upon which he had paid all installments of interest and assessments until May 27, 1899, and that there was still due said association the sum of $111.84.

The amended answer of Elmer Allison admits the death of W. H. Allison intestate, and his leaving the complainants and the defendant as his only heirs, but denies that he was at the time seized of the premises in fee simple; and by his cross-bill he avers that he, Elmer Allison, purchased said lot, together with lots 21, 23 and 24, April 1, 1889, and that on April 8, 1889, he conveyed lot 22 and the west half of lots 23 and 24 to his father, W. H. Allison, but that said deed was not recorded until after the death of W. H. Allison, it being found among his papers by Claudia Barton, his sister; that on July 1, 1889, the two made a verbal contract of exchange, by which Elmer agreed to convey to W. H. Allison the west half of lots 23 and 24 and W. H. Allison agreed to convey to Elmer lot 22; that afterwards Elmer, on the request of his father, conveyed said west half of lots 23 and 24 to one Burroughs for a consideration of $900, which was paid to his father; that at the time of the exchange he went into possession of lot 22, and has been in the open, visible and continuous possession ever since, and has paid all taxes levied or assessed against said property from that time; that on July 18, 1889, with the knowledge and consent and at the request of his father, he took a loan from the Danville Building Association for $400 and gave a mortgage on said lot 22, which money was used to buy a house, which was afterwards moved on said lot with the knowledge of his father; that said loan was entirely re-paid by him; that it was by inadvertence that no deed was made by his father to him for the property; that never after said contract of exchange

did his father ever make any claim to or exercise rights of ownership over the property; and prays the complainants in the original bill may be decreed to make deed.

The answer to this cross-bill denies all allegations and pleads the Statute of Frauds. After all the evidence was in and the case was reported by the master, complainants offered to file a plea of the Statute of Limitations, which the court refused.

The cause being referred to the master a second time on the exceptions to his first report being sustained, the master finds that eight witnesses testify to conversations in 1891, in which W. H. Allison stated that he and Elmer had traded the property in question for the Burroughs property; that W. H. Allison told the tenants they must pay rent to Elmer for lot 22, and that they did so; that at the time of the trade Elmer lived on lot 21, north of lot 22, but that after the trade (in June, 1891,) he moved on lot 22, and that since then W. H. Allison has exercised no acts of ownership over it; that neither W. H. Allison nor his heirs since have paid any taxes; that one witness testified to conversations between Elmer and his father, heard by witness, in which they spoke about trading the properties, and that a week or two after that W. H. Allison told him he had traded.

Exceptions to this report being overruled, the court entered a decree finding substantially the above facts found by the master and set out in the cross-bill, and that Elmer had, since the supposed trade, made valuable improvements on the property, which, by stipulation made on the hearing, were admitted to be, in addition to the dwelling house, a buggy shed of the value of $25; eaves-troughs, $7; cellar, $40 to $50, and a cistern, $18; finds the equities with the appellee, and orders a deed made to him as prayed in his cross-bill and the dismissal of the original bill at complainants' costs. To reverse the decree this appeal is prosecuted.

GEORGE R. TILTON, and WILLIAM L. CUNDIFF, for appellants.

KEESLAR & ACTON, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

Appellants contend that the facts in this case do not bring it within the rule laid down in *Geer* v. *Goudy,* 174 Ill. 514, and former decisions of this court, with reference to the enforcement of parol agreements for the conveyance of real estate as between father and son, and here, as in that case, the enforcement of the supposed parol contract should not have been decreed. In that case we said (p. 521): "Equity will not enforce the promise of a gift of land by the father to the son, unless the promise has not only been acted upon by taking possession of the land, but also by the expenditure of money and the making of valuable and permanent improvements with the knowledge and consent of the promisor;" and that "mere declarations made by the promisor or donor to third persons do not constitute such clear, definite and unequivocal testimony,"—citing authorities. In that case the proof showed that all the improvements made on the premises were paid for by the father. Here the improvements were paid for by the son. He it was who purchased the lots originally. The proof shows the transaction was not a gratuity from father to son, but a business agreement for value. That a re-conveyance of lot 22 was intended to be made is manifest from the evidence in this record.

Under the facts, a plea of the Statute of Limitations interposed by parties out of possession, and adversely to whom and those in privity with whom appellee held, has nothing on which to rest.

The decree of the circuit court of Vermilion county was right, and its judgment is affirmed.

*Decree affirmed.*