(Nos. 18558-18559.—Reversed and remanded.)

JOHN L. FLANNERY, Appellee, *vs.* FLORENCE FLANNERY
WOOLVERTON *et al.* Appellants.

*Opinion filed February 24, 1928—Rehearing denied April 12, 1928.*

1. SPECIFIC PERFORMANCE—*evidence must be clear and certain to take contract for conveyance out of Statute of Frauds.* To take a contract for a conveyance out of the Statute of Frauds the contract must be definite and certain in its terms and must be established by testimony of an undoubted character.

2. SAME—*evidence of disposition of property contrary to provisions of Descent act will be carefully weighed.* Courts of equity accept with caution evidence offered in support of an agreement to make a disposition of the property of a deceased person different from that provided by law and will weigh such evidence scrupulously, especially where it is sought to establish a contract between a parent and child by circumstantial evidence.

3. SAME—*when will is admissible to disprove contract for conveyance.* Where a bill for specific performance alleges an agreement on the part of the complainant's deceased father to convey to the complainant certain residence property if he would move into it and provide the father a home for the rest of his life, evidence that the father, after making the alleged promise and while he was still in possession of the premises, made a will in which he disposed of the property is admissible to show that the father still regarded the property as his own.

4. SAME—*what part performance necessary to take contract out of Statute of Frauds.* To take a contract for conveyance out of the Statute of Frauds on account of part performance, the acts of performance must be referable to the contract and it must be clear that the promisee went into possession under the contract and made improvements with his own means and on the faith of the promise which were valuable in comparison with the value of the property; and this is particularly true where the agreement is between parent and child.

5. SAME—*mere expression or declaration of intention to convey cannot be enforced.* While a contract, in some instances, may be established by declarations of one of the parties coupled with acts of the other consistent with the declarations, as a general rule a contract is not to be inferred from mere declarations of one of the parties, and the mere expression of an intention to convey property, which does not culminate in a binding agreement with mutual obligations, is not a contract which can be specifically enforced.

6. SAME—*specific performance will not be decreed where the promisee can be compensated at law.* The performance of personal services the value of which may be estimated in money and for which a recovery may be had at law will not take a contract for a conveyance out of the Statute of Frauds as the law affords an adequate remedy, and it is only where the Statute of Limitations bars a recovery at law or where improvements made or services performed cannot be adequately compensated at law, or where failure to carry out the agreement will amount to a fraud upon the promisee, that specific performance will be allowed.

APPEALS from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

UNDERWOOD, SMYSER, YOUNG & BASSE, (CHARLES R. YOUNG, of counsel,) for appellant Florence Flannery Woolverton.

HICKS & FOLONIE, (ROBERT J. FOLONIE, of counsel,) for appellant the Northern Trust Company.

CUTTING, MOORE & SIDLEY, (CHARLES S. CUTTING, of counsel,) for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This appeal is from a decree of the superior court of Cook county ordering the specific performance of an oral contract between appellee, John L. Flannery, and his father, and directing that a valuable residence property at 3528 Pine Grove avenue, Chicago, be conveyed by appellant the Northern Trust Company to appellee.

John L. Flannery, Sr., died testate December 8, 1920, leaving as his only heirs, appellee, his son, and Florence Flannery Woolverton, his daughter, one of the appellants. By his will, dated November 24, 1920, he made several specific bequests and then devised all the remainder of his property to the Northern Trust Company, with directions to

make certain provisions for a brother, a sister-in-law and a grandson, and to distribute the remainder of the net income to his children in equal shares during their lifetime, and then made final disposition of the trust estate. Testator died possessed of considerable real and personal property. He was the chief, if not the only, owner of the capital stock of the Boye Needle Company, a prosperous manufacturing concern of Chicago. During his lifetime he had made certain gifts to his children, among them a valuable summer home on Diamond lake, in Michigan, to his daughter in August, 1918, and a similar summer home, worth over $25,000, to his son in September, 1919. Testator bought the Pine Grove avenue property about 1912 and occupied it as his residence until the time of his death. September 15, 1919, appellee married his present wife in Boston, Massachusetts. He and his father went to Massachusetts by automobile and on the way stopped at Torrington, Connecticut, and had dinner with friends, Mr. and Mrs. William R. Reid. During the course of the conversation concerning the approaching wedding the father said, "I am giving my home to my son, John, after the wedding, but I expect to live with them and be their star boarder." Appellee was present but there is no evidence that he made any response to this statement by his father. In Boston, Flannery, Sr., had some conversation with Mr. and Mrs. Thomas I. McMackin, parents of the bride, concerning this property. He told them that his home was on Pine Grove avenue, Chicago, and that he was going to give it to his son and their daughter after the wedding. During the course of the conversation he said that his housekeeper, who was the widow of his deceased brother, desired to go to New Mexico to live with her son, and that he expected appellee and their daughter to move into the property when they returned from their wedding trip. Mrs. McMackin testifies that Flannery, Sr., called their residence by telephone the evening before the wedding and inquired whether Olive,

their daughter, had gone to bed; that she told her daughter that father Flannery wanted to talk to her, and that her daughter took the telephone; that she was standing near and could hear the conversation; that she heard him say, "I forgot to tell you about the wedding present last night— the Pine Grove avenue house, No. 3528; there is a string attached to it;" that her daughter replied, "I am not worrying about the wedding present; what is the string?" and that she heard him say, "I am to remain at the house just exactly as I am at present and can stay there just as long as I care to;" that her daughter replied, "That's all right." The McMackins testify that after the wedding was over, Flannery, Sr., said, "I have given the children the house as a wedding present, and when they get back to Chicago from their wedding trip I will hand them the deed." From Boston, Flannery, Sr., went to New York City, where he called on Joseph Reinckens, branch manager of the Boye Needle Company, and during his stay there told Reinckens that he had given his Chicago house to his son as a wedding present on the condition that they could not throw him out, because he intended to live with them for the rest of his days. When appellee and his bride returned to Chicago, Flannery, Sr., did not give them a deed nor did they establish their residence in his home. They took an apartment at the Shore Crest Hotel and remained there until Christmas. October 17, 1919, Flannery, Sr., made a will, by the third clause of which he devised the residence property at 3528 Pine Grove avenue to appellee. December 26, 1919, appellee and his wife moved into the Pine Grove avenue property, and shortly thereafter Flannery, Sr., took an automobile trip to California. He returned in the spring of 1920, and shortly thereafter appellee, having suffered a nervous breakdown, left with his wife for Maine, where they remained until fall. During the spring and summer Flannery, Sr., said to employees at the factory and at the home that he had given the house to his son and that bills

for household supplies and repairs and improvements about the premises should be charged to his son. Appellee employed a man to scatter some dirt which had been hauled onto the lot and to seed the lawn. He also caused the trees to be trimmed and some shrubbery to be planted. Inside the house he made some changes in the electric wiring and fixtures and did some decorating. February 12, 1920, he wrote his brother-in-law about changes he was making at the house, and among other things said: "The fixtures and other improvements necessary to be made in the house, father, of course, did not care to do anything about, because he figured on selling the house until I moved there, and, with the improvements that are being made up at the lake, I feel that the only thing I can do to in any way try to balance it, is to take care of my end of it here. This we want to do to the best of our ability, and I think in about three or four months' time from the appearance of the house itself inside will show a great improvement. I discouraged father building his garage there in Chicago this year." In the spring of 1920 Flannery, Sr., paid the taxes for 1919; but that is of little significance, because the son did not move into the property until the end of the year. In 1921, and subsequently, appellee paid the taxes, but the father was dead and his payment of the taxes proves nothing. During 1920 some of the bills for repairs and improvements at the Pine Grove avenue property were paid by Flannery, Sr., and some of them by appellee. None of them were large in amount. October 27, 1920, Flannery, Sr., renewed the insurance on the house and paid the premium by his check.

Appellants plead the Statute of Frauds, and all the authorities agree that in order to take the case out of the operation of the statute the contract to convey real estate must be definite and certain in its terms and established by testimony of an undoubted character which is clear and unequivocal. The reason for this rule is apparent. The Statute of Frauds is designed to prevent wrong through

fraud and perjury, and the courts have no right to construe the statute so as to destroy its meaning. A court of equity ought not to act upon conjectures nor upon loose, casual statements. The evidence should be such as to establish with reasonable certainty the fact that the agreement was made and the terms of the agreement. Courts of equity accept with caution evidence offered in support of a contract to make disposition of the property of a deceased person different from that provided by law and will weigh such evidence scrupulously. (*Hutton* v. *Busaytis,* 326 Ill. 453; *Wood* v. *Thornly,* 58 id. 464.) This is particularly true where it is sought to establish a contract between a parent and child by circumstantial evidence.

The bill alleges that Flannery, Sr., and appellee, entered into an agreement on or about September 14, 1919, whereby the latter was to become the owner of the Pine Grove avenue property on condition that he take possession of the premises and provide the former with a home during the remainder of his life. There is direct evidence of such a proposition by Flannery, Sr., but there is no direct evidence that the proposition was accepted by appellee. After the proposition was made and while Flannery, Sr., was still in possession of the premises, with legal title to the same, he executed a will in which he disposed of them. This declaration is regarded as a part of his act of possession and is admissible for the purpose of showing that he then regarded the property as his own. (*Knight* v. *Knight,* 178 Ill. 553.) Appellee and his wife did not move into the property upon their return from their wedding trip nor did Flannery, Sr., deliver a deed to them, as the witnesses say he expressed the intention of doing. To take a parol agreement for the conveyance of real estate out of the Statute of Frauds on account of part performance all acts performed thereunder must be referable to the contract, and it must be clear that the promisee went into possession under the contract and made valuable improvements on the property with his own

means and upon the faith of the promise; and this is particularly true where the agreement is one between parent and child. (*Stephens v. Collison*, 313 Ill. 365.) The improvements must be valuable in comparison with the value of the property, and must be something more than a tenant who expected to occupy the property for a number of years would make for his own comfort and convenience. (*Clark v. Clark*, 122 Ill. 388.) While a case may be made out by proof of the declarations of one of the parties coupled with the acts of the other party consistent with the declarations, (*Willis v. Zorger*, 258 Ill. 574,) it is the general rule that a contract is not to be inferred from the mere declarations of one of the parties, because if such were the rule the contract might be enforced against one and not against the other. (*Geer v. Goudy*, 174 Ill. 514.) The mere expression of an intention to convey property, which does not culminate in a binding agreement with mutual obligations, is not a contract which can be specifically enforced. (*Cassel v. Cassel*, 104 Ill. 361.) The performance of personal services which can be estimated in money and for which a recovery can be had at law will not take a contract out of the Statute of Frauds, for the reason that the law affords an adequate remedy; (*Weir v. Weir*, 287 Ill. 495; *Gladville v. McDole*, 247 id. 34;) and this can generally be said of any situation where compensation can be made to the promisee. Where the Statute of Limitations will bar a recovery of a large amount of money due the promisee, or where the improvements made or the services performed are of such a character that adequate compensation cannot be made and failure to carry out the contract will amount to a fraud upon the promisee, specific performance will be allowed. *Mayo v. Mayo*, 302 Ill. 584; *Dalby v. Maxfield*, 244 id. 214; *Warren v. Warren*, 105 id. 568.

If it be considered that the contract has been sufficiently proved, we are of the opinion, applying the rules announced, that appellee has failed to prove such acts of part perform-

ance as are sufficient in equity to take the case out of the operation of the Statute of Frauds. The equitable rule that gives relief in the case of partial performance, notwithstanding the contract rests in parol, was established for the same purpose for which the Statute of Frauds was enacted, namely, the prevention of fraud. The basis upon which the doctrine of partial performance rests is, that when a verbal contract has been made and the promisor has knowingly permitted the promisee to do acts in part performance of the agreement, in full reliance upon it, which would not have been done without the agreement, and which are of such nature as to change the relations of the parties and prevent a restoration to their former condition or an adequate compensation for the loss to the promisee by a judgment at law for damages, then it is a fraud in the promisor to interpose the Statute of Frauds as a bar to the completion of the contract and thus secure for himself all the benefits of the acts done in part performance, while the promisee not only loses all advantage from the bargain but is left without adequate remedy for its failure or compensation for what he has done in pursuance of it. (*Barrett* v. *Geisinger,* 148 Ill. 98.) If it be conceded that appellee entered into possession of the premises under the agreement which he alleges, it cannot be said that he can not be restored to his former condition or cannot be adequately compensated for whatever services he rendered or whatever expenditures he made in improving the property. As compared with the value of the property the improvements were trivial. They were such as any son would have made on property which he expected to occupy as a residence for a considerable period of time. He rendered little personal service to his father for the reason that they were in the home together for only a few weeks. During the first four months of their joint occupancy of the premises the father was in California and during the next few months the son was in Maine. The proof presented does

not meet the requirements of the rule which will take the case out of the operation of the Statute of Frauds, and specific performance must therefore be denied.

The decree is reversed and the cause is remanded to the superior court, with directions to dismiss the bill for want of equity.          *Reversed and remanded, with directions.*